(163 App. Div. 320)

### ELY v. ELY et al. (No. 5765.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. WILLS (§ 820*)—LEGACIES—LIABILITY OF REAL ESTATE.

Testator by will, executed in 1906, left $200,000 to his executors in trust for his brothers and sisters and left the residue of his estate to his executors in trust to pay the income to grandnieces for life, with survivorship and gifts over, and provided that all inheritance taxes should be paid out of the residuary estate. Thereafter he executed a deed of trust, transferring to a trust company certain securities and assets valued at about $400,000, the income of which was payable after his death to the two grandnieces, with gifts over to practically the same persons to whom the gifts over were made by the first will, and thereafter, in 1909, executed a codicil, revoking disposition of the $200,000 fund and the residuary clauses, and giving to his brothers and sisters certain specific real estate, and in 1911, shortly before his death, executed a codicil appointing new executors, ratifying all the other provisions and giving numerous bequests of money to individuals and institutions, and four be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

quests of $100,000 each to constitute a memorial fund, and provided that if his personal estate was insufficient to pay such legacies, they should abate pro rata or in toto before previous legacies. Testator was a man of large affairs, who had given much time to the preparation of his will, whose debts did not exceed $1,700, and who during the three years preceding his death had given away large amounts, and knew that the legacies exceeded his personal property. The personal estate was appraised at $666,000 and the real estate at $493,000, and the legacies aggregated $1,180,000. *Held*, that testator intended to dispose of his entire property, and that the legacies should be paid, and hence that they should be charged on his real estate, except that specifically devised.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2114–2119, 2121; Dec. Dig. § 820.*]

2. WILLS (§ 487*) — CONSTRUCTION — SITUATION OF TESTATOR AND CIRCUMSTANCES OF MAKING WILL.

In the construction of such will, extraneous evidence of the circumstances and conditions under which it was executed, the relation that testator bore to his family, the scheme of his disposition, and the nature and extent of his property, and his knowledge thereof were admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

3. CHARITIES (§ 3*)—CHARITABLE USE—STATUTES.

Laws 1893, c. 701, § 1, declaring that no grant or devise to a charitable use shall be held void for indefiniteness or uncertainty of the persons designated as beneficiaries and section 2, giving the Supreme Court control over such grants, was enacted to restore the law of charitable trusts as recognized in England prior to the Revolution.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

4. CHARITIES (§ 21*)—TESTAMENTARY TRUST—VALIDITY—CERTAINTY OF BENEFICIARIES.

Under Laws 1893, c. 701, §§ 1, 2, declaring that no grant or devise to a charitable use shall be void for indefiniteness or uncertainty of the designated beneficiaries, and giving the Supreme Court control over such grants, a bequest of $50,000 to an unincorporated hospital, which was also an unincorporated association, carrying on a general hospital service and treating all in need without distinction as to race, etc., and free of charge to those unable to pay, and which, under the law of New Jersey where it was situated, might receive a gift in perpetuity for charitable uses, created a trust for charitable uses which, if no trustee competent to take had been named, would not fail for want of a trustee.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. § 21.*]

5. WILLS (§ 16*)—BEQUEST—VALIDITY—STATUTES.

Under Decedent's Estate Law (Consol. Laws, c. 13), § 19, providing that no devise or bequest to an institution or corporation formed under Laws 1848, c. 319, shall be valid in any will which shall not have been executed at least two months before the death of the testator, bequests to an association incorporated under such law and to a society incorporated by special act (Laws 1866, c. 63, as amended by Laws 1870, c. 27, Laws 1890, c. 418, and Laws 1896, c. 505), contained in a will executed only eight days prior to the testator's death, were invalid; and, an unincorporated charity affiliated with one of such associations and managed by its boards and officers, though a self-governing body in other than financial respects, was a part of such association, so that a bequest to it was likewise invalid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 37; Dec. Dig. § 16.*]

6. ASSOCIATIONS (§ 15*) — CAPACITY TO TAKE BEQUESTS — UNINCORPORATED VOLUNTARY ASSOCIATION.

An absolute gift to an unincorporated voluntary association is invalid.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 19–25; Dec. Dig. § 15.*]

7. EXECUTORS AND ADMINISTRATORS (§ 41*)—ASSETS—RENTS—STATUTES.

Under Code Civ. Proc. § 2712, providing that rent reserved to deceased, which had accrued at his death, shall be assets and go to the executors or administrators for distribution as part of the personal property, rent due in advance, July 1, 1911, on which day at 1 a. m. testator died, belonged to the estate, since the law takes no account of fractions of days.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 283; Dec. Dig. § 41.*]

McLaughlin and Scott, JJ., dissenting in part.

Appeal from Special Term, New York County.

Action by Cheever N. Ely, as an executor of the will of Smith Ely, deceased, against Edwin A. Ely and others, for the construction of the will. From a judgment construing the will, Edwin A. Ely and certain of the other defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Van Wyck & Mygatt, of New York City (Charles F. Brown, of New York City, of counsel, and William M. Wherry, Jr., and Frederic E. Mygatt, both of New York City, on the brief), for appellants Edwin A. Ely and Maria L. Vanderpoel.

Wherry & Mygatt, of New York City, for appellant M. Josephine Ely.

Cadwalader, Wickersham & Taft, of New York City (Francis Smyth, of New York City, of counsel), for appellant New York Ass'n for Improving Condition of Poor.

Parsons, Closson & McIlvaine, of New York City (William E. Carnochan, of New York City, of counsel), for appellant New York City Mission & Tract Society.

Robert P. Beyer, of New York City, for appellant Carmody.

Stewart & Shearer, of New York City (William A. W. Stewart, of New York City, of counsel), for respondent Ely.

Esselstyn & Haughwout, of New York City (Everett J. Esselstyn, of New York City, of counsel, and J. Ard Haughwout, of New York City, on the brief), for respondent Board of Church Erection Fund.

Hill, Lockwood, Redfield & Lydon, of New York City (Morgan J. O'Brien, of New York City, of counsel, and Robert L. Redfield, of New York City, on the brief), for respondent William H. Lawrence, Jr.

Carrington G. Arnold, of New York City, guardian ad litem, for respondent William E. Smith Ely Jelliffe, Jr.

Samuel T. Carter, Jr., of New York City, for respondent Morristown Memorial Hospital.

Thomas J. Sansom, of New York City, for respondent Ambrose E. Vanderpoel.

Henry T. Randall, of New York City, for respondent Baptist Church at Northfield.

Alexander S. Lyman, of New York City (George H. Walker, of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

New York City, of counsel, and Crosby J. Beakes, of New York City, on the brief), for respondent New York State Realty & Terminal Co.

Oscar F. G. Megie, of New York City, for respondent Gladys Megie.

Wilder, Ewen & Patterson, of New York City (John Ewen, of New York City, of counsel) for respondent Trustees of Seventh Presbyterian Congregation of City of New York.

Samuel C. Worthen, of New York City, for respondent Stephen D. Ridelle, Treasurer of Northfield Corporation.

CLARKE, J. This is an action to construe the will of Smith Ely, who died unmarried and childless at 1 o'clock on the morning of the 1st day of July, 1911, a resident of the city and county of New York, and 86 years of age. He left a will executed March 1, 1906, and a codicil executed June 23, 1911, which were duly admitted to probate. His personal estate was appraised at $666,216.84 and his real estate at $492,980.26, not including the value of decedent's home at No. 47 West Fifty-Seventh street, appraised at $37,858.43, which the codicil devised to his heirs.

By the first clause of his will he gave bequests to 11 individuals, five churches, to a cemetery, and to his sister Maria L. Vanderpoel, to whom he left his watches, jewelry, objects of art, and bric-a-brac. By the eighteenth subdivision thereof he bequeathed $12,000, in trust to the United Charities to devote the income arising therefrom to the payment of the expense of furnishing reading and musical entertainment from time to time to the blind paupers in charge of the city of New York.

By the second clause he bequeathed to his executors the sum of $200,000, in trust, to divide the same into four equal portions and to invest one such portion for the benefit of each of his three brothers and his one sister, and to pay over the income arising therefrom during his or their life to such beneficiary. Upon the death of Ambrose K. Ely and Edwin A. Ely, respectively, he directed his trustees to pay over the principal of the trust held for their respective benefits to the American Sunday School Union; upon the death of his brother, William H. Ely, the trustees were directed to subdivide the principal of the trust fund for his benefit into two smaller shares, and to pay over the rents, issues, and profits from one of said smaller shares to each of his nieces, Julia E. Griffen and Alice E. Chambers during their respective lives, and, upon their death, the principal to their issue; on the death of his sister, Maria L. Vanderpoel, to pay over the rents, issues, and profits of the fund held for her benefit to her son Ambrose E. Vanderpoel, during his natural life, the principal to be paid to his issue, in the event of the death of both the said Maria L. Vanderpoel and the said Ambrose E. Vanderpoel leaving no issue, to pay over and deliver the principal of the said trust fund to the New York Mission and Tract Society. By the third clause he provided for the payment out of his residuary estate of all transfer and inheritance taxes on the foregoing legacies.

"Fourth: All the rest, residue and remainder of my property, both real and personal, of whatever kind and wherever situate, I give, devise and bequeath

to my executors hereinafter named, in trust, however, to invest and keep the same invested and to pay over the income arising therefrom in equal shares or portions to the following named persons and the survivors of them, during the lives of my grandnieces Majorie Smylie and Alice Chambers, and the survivor of them, or until the surviving beneficiaries are reduced in number to ten, when in either event, I direct my said trustees to pay over and deliver the principal of the trust fund to the surviving beneficiaries in equal shares, or portions, to wit [naming 36 different persons].

"Fifth: I hereby nominate and appoint William H. Ely, Dr. Porter F. Chambers, Ambrose E. Vanderpoel, and Dr. S. Ely Jelliffe to be the executors of and trustees under this my will and hereby authorize and empower them and the survivors and survivor of them in their and his discretion to lease or sell all or any part of the real property of which I may die seized at such time and in such manner as to them or him shall seem best and to execute and deliver good and sufficient leases and conveyances thereof and also, either as executors or trustees, to retain all or any part of the investments of securities of which I may die possessed and to invest the moneys belonging to my estate in such securities as they may in their discretion deem best, whether the same be authorized by law or not; and I further authorize and empower my said executors, or such of them as may qualify, and their substitutes as herein provided, the survivors and survivor of them, to fill any vacancies which may occur in their numbers by nominating substitutes, such nominees to qualify, with the approval of the Supreme Court or Surrogate's Court, in the same manner and to have the same powers and duties as if herein named. I further direct that no bonds or other security for the faithful performance of their duties be required of my said executors and trustees or of any of them or of their said substitutes."

May 29, 1907, testator executed a deed of trust to the United States Trust Company of New York by which he transferred to said company in trust the securities and assets set forth in a schedule attached thereto to hold, manage and invest and to pay the income thereof quarterly to himself during his life, or so long as he should so direct, and upon his death or such earlier direction, "to pay said income in equal shares or portions to the following named persons and survivors of them." This trust, however, to continue only during the lives of Majorie Smylie and Alice E. Chambers, Jr., the grandnieces of the party of the first part, and the survivor of them or until the surviving beneficiaries hereinafter named are reduced in number to 10, and upon the death of the survivor of the said grandnieces or the prior reduction in the number of beneficiaries thereinafter named to 10, then and upon the happening of either event to pay over and deliver the principal of the trust fund to the surviving beneficiaries in equal shares or portions, to wit (naming 41 persons). And he reserved the right at any time during his life by an instrument in writing under his hand, and duly acknowledged, to amend or revoke this trust deed, and to change or terminate the trusts thereby created. Attached to said deed was a list of securities. The court has found that the value of the property held in said trust at the death of Smith Ely was $399,624.24. It remained in effect and unrevoked at testator's death.

Of the 41 ultimate beneficiaries named in this trust deed 36 were the same persons named as residuary beneficiaries under the fourth or residuary clause of the will, and the trust estate was limited on the same two lives or the reduction of the surviving beneficiaries to 10. June 11, 1909, Mr. Ely executed a codicil to his will of March 1, 1906. By this he revoked the bequest made by the eighteenth subdivision of

paragraph first, and all of the provisions of the fourth or residuary clause.

He gave and devised to his sister Maria L. Vanderpoel and his brothers William H. Ely and Edwin A. Ely, the survivor and survivors of them, all his right, title, and interest in and to the house and lot known by the street No. 47 West Fifty-Seventh street, and in what is known as the Ely homestead farm at Livingston, N. J., and all his other real property in Livingston, to be divided between them, share and share alike.

He made bequests to 26 additional individuals, four additional churches, and to the Morris County Children's Home.

The fourth clause, a substitute for the fourth clause of his will specifically revoked, provided as follows:

"All the rest, residue and remainder of my property, both real and personal as well as that which I may hereafter acquire as that which I now possess, I give, devise and bequeath to the New York Mission and Tract Society, the American Sunday School Union, the Children's Aid Society, the New York Juvenile Asylum, the New York Association for Improving the Condition of the Poor, the Orphan Asylum Society of the City of New York, the Lincoln Hospital and Home and the Prison Association of New York to be divided equally among them and to be held by each as an endowment fund named after the late Ambrose K. Ely, deceased."

Save as modified he ratified and affirmed his will.

By the codicil admitted to probate executed June 23, 1911, he again revoked the eighteenth subdivision of the first paragraph of his will and all of the provisions contained in paragraph 4, which disposed of the rest, residue, and remainder of his property in trust for the benefit of the 36 persons named therein. He revoked the appointment of the four executors named in paragraph "Fifth" of his will, and in their place and stead appointed Cheever N. Ely, George B. Vanderpoel, and Ambrose E. Vanderpoel, executors, and ratified all the other provisions of the said fifth paragraph. He renewed the devise in the codicil of 1909, to his sister and to his brothers, William H. Ely and Edwin A. Ely, the survivors or survivor of them, of 47 West Fifty-Seventh street and the Ely homestead farm and other real property at Livingston, N. J., "all of the said parcels of real property to be divided among them share and share alike."

He bequeathed to his executors $20.000 in trust to be invested and to pay over the net income thereof to Adelaide V. Ely Goddard during her natural life, and directed upon her death the said sum should become a part of his residuary estate.

By the fifth clause he gave and bequeathed various sums of money to 40 different persons, 23 of whom had been included in the 1909 codicil, 3 only named in said codicil being omitted. The four churches there named were included, three having their legacies increased; the legacy of the Morris County Children's Home at Parsippany, N. J., was increased from $18,000 to $50,000; and the following new bequests were made: To the Fresh Air Home for Crippled Children, known as "Sea Breeze," at Coney Island, N. Y., the sum of $50,000; to the East Side Mission of the Madison Square Presbyterian Church of the city of New York the sum of $50,000; to the West Side Day

Nursery, of the city of New York, the sum of $10,000; to the Spring Street Presbyterian Church, of the city of New York, the sum of $10,000; to the Orange Memorial Hospital, of Orange, N. J., the sum of $50,000; to the Morristown Memorial Hospital of Morristown, N. J., the sum of $50,000; and to the Overlook Hospital of Summit, N. J., the sum of $50,000—

"provided that the said several sums of fifty thousand dollars shall be used by the said hospitals respectively to endow, in perpetuity, as many beds therein as the said several sums of fifty thousand dollars will permit, according to the by-laws of the said respective hospitals. The said beds shall be occupied by such persons as may be designated from time to time by my brothers and sister and their direct descendants."

"Seventh: After the payment of all other legacies and of the transfer taxes which may be lawfully imposed upon them, as in my will provided, I give and bequeath to the Children's Aid Society of the City of New York the sum of $100,000; to the New York Society for Improving the Condition of the Poor, of the City of New York, the sum of $100,000; to The Board of Church Erection of the Presbyterian Church of the United States, the sum of $100,000; and to the New York City Mission and Tract Society, of the city of New York, the sum of $100,000. Provided that the said several sums of one hundred thousand dollars shall each constitute a special endowment fund to be forever called and known as The Ambrose K. Ely Memorial. And provided further, that if my personal estate should be insufficient to fully pay all of the legacies enumerated in my will and the codicil thereto, together with the transfer taxes which may be imposed upon them, I direct that the legacies to the four corporations last above mentioned shall abate pro rata or in toto, as the necessities of the case may require, before the abatement of the legacies previously provided for in my said will and the codicil thereto."

Save as modified, he ratified and affirmed his will of March 1, 1906, revoked any and all codicils theretofore made, and declared this to be the only codicil to his last will and testament. This codicil was executed eight days before testator's death; Mr. Ely believed his death to be imminent.

The court found: That before executing such codicil testator devoted much time to preparing memoranda of the legacies to be given thereby, computing the aggregate amount of such legacies and estimating the value of his real and personal property. That he had in his possession a complete list of his personal property, and that list contained the market value as of the 5th day of June, 1911. That while he was fixing the amounts of the legacies to be given, he computed the value of his personal property as shown by said list set forth therein as of the 5th day of June, 1911, at $639,802. That testator also had in his possession a list of his real property, and while preparing instructions for this codicil, he computed the aggregate value thereof, and, exclusive of the property specifically devised, it was about $600,000; at the time of his death it has been found to be $456,111.77. That the legacies given or attempted to be given by the codicil to said will amount to $937,000, and, with the legacies given or attempted to be given by the said will, aggregate $1,181,000, and that the value of testator's entire personal property at the time of executing such codicil and at his death was about $660,000, and at the time of executing such codicil testator knew that his personal property was insufficient to pay the legacies given thereby. The debts of the testator, which were paid, amounted to $1,179.57. Within a period of three years be-

fore his death, the said Smith Ely gave away several hundred thousand dollars of personal property. That during his lifetime he had given large sums of money to various religious and charitable institutions. That he left him surviving no ancestors or descendants and no brothers or sisters, except his brothers, William H. Ely, Edwin A. Ely, and his sister, Maria L. Vanderpoel, and that he left him surviving no descendants of any predeceased brother or sister. That Ambrose K. Ely, a brother, died before him on the 6th day of February, 1907, leaving an estate of about $6,000,000, and by his will left testator and to his other two brothers and sister property to the value of over $1,000,000. That the testator in using the words "personal estate" in paragraph seventh of the codicil to his will intended to distinguish between his own estate and that held in trust for his benefit under the trust deed made by him and above set forth. That the codicil was drawn by Ambrose E. Vanderpoel, a nephew of the testator and a son of his sister, Maria L. Vanderpoel, and the instructions for said codicil were given orally, and were not taken down by said Vanderpoel. That he did not advise the testator that the effect of the last clause of paragraph seventh of the codicil as drawn by him would, if the language thereof was given its technical meaning, result in the testator dying intestate as to all his real property not specifically devised. That the testator intended to charge the payment of the legacies given by his will upon the real property not devised by him. That the testator intended that all of the legacies given by his will and codicil should be paid in so far as his real property not specifically devised and personal property might be sufficient therefor.

And as conclusions of law: That the legacies given by the will and the codicil thereto are charged upon the real property of which he died seised and which was not specifically devised by him. That the power of sale given to the executors is a valid power, and should be exercised by them for the purpose of paying the legacies given by his will and the codicil thereto and the transfer and inheritance taxes. That the legacy given by subdivision 17 of article first to Ely Cemetery, in amount $5,000, is invalid. That the legacy to the New York Society for Improving the Condition of the Poor, in amount $100,000, is invalid. That the legacy to the Fresh Air Home for Crippled Children, known as "Sea Breeze," at Coney Island, N. Y., in amount $50,000, is invalid. That the legacy to the West Side Day Nursery of the city of New York, in amount $10,000, is invalid. That the legacy to the Children's Aid Society, in amount $100,000, is invalid. That the legacy to the New York City Mission and Tract Society, in amount $100,000, is invalid. The amount of legacies thus declared to be invalid are $365,000. That at the date of testator's death Overlook Hospital was and is a charitable institution as to its objects and purposes. That the bequest of $50,000 is a valid gift for charitable uses. That the Overlook Hospital, a corporation duly organized under the laws of New Jersey, is qualified and empowered to take and hold as trustee the said bequest of $50,000 to the Overlook Hospital, and that the said legacy should be paid to the said corporation to be used solely to endow in perpetuity as many beds therein as the said sum will permit,

to be occupied by such persons as may be designated from time to time by William H. Ely, Edwin A. Ely and Maria L. Vanderpoel and their respective descendants. That after the payment of all valid legacies and all transfer and inheritance taxes thereto, the executors should pay to the defendant the Board of Church Erection Fund of the General Assembly of the Presbyterian Church of the United States the legacy given by article seventh of the codicil to said last will to the Board of Church Erection of the Presbyterian Church of the United States. That all of the legacies given by the said will and codicil, and not hereinabove held to be invalid or to have lapsed, are valid legacies; that all rentals which became due in advance on the 1st day of July, 1911, upon property of which the testator died seised belonged to testator's estate and should be distributed as a part thereof.

From the judgment entered thereon the defendants Maria L. Vanderpoel, Edwin A. Ely, and M. Josephine Ely, individually and as executrix, appeal from the part thereof adjudging that the legacies are charged upon the real property not specifically devised; that the power of sale should be exercised for the purpose of paying the legacies and the transfer and inheritance taxes; that the legacy of $50,000 to the Overlook Hospital is a valid gift; that the rentals which became due in advance from the 1st day of July, 1911, became part of testator's estate. The New York City Mission and Tract Society appeals from so much of the judgment as decrees that the legacy of $100,000 given to it is invalid; the New York Association for Improving the Condition of the Poor appeals from so much of the judgment as adjudges that the legacy of $100,000 to it is invalid, and the legacy of $50,000 to the Fresh Air Home for Crippled Children, known as "Sea Breeze," is invalid. The Attorney General appeals from so much of the judgment as declares the $50,000 legacy to the Fresh Air Home for Crippled Children, known as "Sea Breeze," is invalid.

[1, 2] First. I am of the opinion that the testator intended that the legacies provided for by him should be paid; that he knew that the amount of his personal property was insufficient in and of itself to satisfy all the legacies; that he therefore intended that they should be charged upon his real estate; and that the will should be so construed. He had been mayor of the city of New York, and had occupied other public positions. He was 86 years of age, and had never married. His nearest relatives and natural heirs were two unmarried brothers and a married sister near his own age, each possessing a large and independent estate. Within a few years his brother, Ambrose K. Ely, had died, leaving an estate of about $6,000,000, much of which the family inherited. Certain of the large donations in the will were prescribed to be to perpetuate his memory. The will was the result of a number of years of thought and change. He remembered and took care of a large number of friends and relatives. He was a generous and public spirited man, who had given away, during his lifetime, large amounts. The changes in the testamentary provisions, illustrated by the will and the two codicils, in some instances grew out of the fact that he had made provisions before his death which accounted for omission in the last codicil. By the trust deed he

left a separate estate, consisting entirely of personal property, of $400,-000, untouched and unaffected by the will, but illustrating his widespread interest in his friends and his care for them. The changes in the three testamentary papers, with the exception of the residuary clause, are insignificant and unimportant. Almost all of the legacies are preserved through the three papers, in many instances their legacies are increased, and the number of his beneficiaries is added to. In the original will there is an absolute residuary clause of all his real and personal estate, and his executors are given a full, complete, and absolute power of sale. It is obvious that by that will his whole estate, both real and personal, was applied to the satisfaction of its various provisions. By the codicil of 1909 the residuary clause is altered. By the trust deed, which was executed by him in 1907, after the execution of his will, he had provided for all of the 36 individuals named in the residuary clause of his will, and in the same way; that is to say, a trust was created dependent upon the same lives and the same contingencies that had been provided for in the residuary clause of the will, which assured to the persons named therein, after his death, the beneficial interest, with remainder over to the specified survivors, in a fund of $400,000. So that in the first codicil, after increasing the number of his individual beneficiaries, he provided that his entire residuary estate should go to eight charitable institutions, and while he revoked so much of the will as named the executors and substituted others in their place, he fully and completely ratified and affirmed all the other provisions of said clause, which included, of course, the power of sale. When he came to execute the last codicil he believed that his death was imminent, and he called in his nephew for the purpose of making certain changes in that codicil. It does not appear that the will was in the possession of or was seen by the draftsman. The codicil undoubtedly was. This codicil specifically revoked the same provisions of the will which had been in turn revoked by the codicil of 1909, largely increased the number of beneficiaries, added to the amounts previously given to others, and extended the scope of his benefactions to other churches and charitable institutions, and there was no residuary clause, but in lieu thereof there was a specific bequest of $100,000 to three of the institutions who were the residuary legatees named in the codicil of 1909, and to a fourth not theretofore named, and these legacies were in terms constituted a special endowment fund to be forever known as the Ambrose K. Ely Memorial. The testator had, as it appears in the evidence, complete lists of his property, both real and personal, which were revised as to the market value of the securities therein every six months. His bequests aggregated $1,180,-000. He had before him the list of his personal securities which he computed to amount to $660,000.

It is not credible, considering the manner of man that Smith Ely was, as painted by his own hand in these testamentary papers, that within the shadow of death, as he felt himself to be, he should knowingly perpetrate a grim and ghastly jest upon the individuals, churches, and societies named in his will, of purporting to give to them $1,-180,000, when he only had $660,000 wherewith to pay. No natural

objects of the testator's bounty, widow, children, or descendants, clamor to us to mark this venerable and public spirited man as enacting a practical joke at the edge of his grave. I have no doubt that he intended his entire estate, both real and personal, to satisfy his benefactions. Considering the insignificant amount of his debts, a trifle over $1,000, the absolute power of sale to his executors, which in both codicils he ratified and affirmed, would be meaningless and useless if he thought or intended that his real estate had not been disposed of by his will. He specifically disposed of the family home in New York City, and the family home in Livingston, N. J., to the same persons who would take all of his real estate if undisposed of. Why, if he intended that all of his real estate should go as undisposed of to his brothers and sister, should he have made these specific devises to them? And it should be noted that this devise was not contained in the will, but first appeared in the codicil of 1909 and was repeated in that at bar. So there is not in this will the entire omission of any reference to any real estate which has sometimes been held to be a guide to interpretation. In addition to the specific power of sale to the executors and to specific devise of part of the real estate, we have a plausible explanation of the phrase:

"And provided further, that if my personal estate should be insufficient to fully pay all of the legacies enumerated in my will and codicil thereto, together with the transfer taxes which may be imposed upon them, I direct that the legacies to the four corporations last above mentioned shall abate pro rata or in toto, as the necessities of the case may require, before the abatement of the legacies previously provided for in my will and the codicil thereto."

It is that he had in mind the trust estate in the hands of the trust company under the trust deed executed by him in 1907, of which he was the beneficiary during his life, and intended to differentiate the estate he was disposing of by his testamentary instrument, which he called his "personal estate," and not—which would have been most natural if he meant something else—his "personal property," from his said trust estate, which after his death would be disposed of under and in accordance with the terms of the trust deed. The extraneous evidence produced in his case, and of which the heirs at law complain upon this appeal, appears to me to have been clearly admissible as showing the surrounding circumstances and conditions under which the testamentary document was executed, the relation that the testator bore to his family, the scheme of his disposition, the nature and exent of his property, and his knowledge thereof. It is to explain and support the will and not to destroy it. It is the kind of evidence which, as I understand it, the Court of Appeals has many times determined to be admissible. Upon this branch of the case, that is to say, whether the legacies are to be charged upon the real estate, I cite the following authorities:

In Taylor v. Dodd, 58 N. Y. 335, testator provided in his will for a large number of legacies, but there was no residuary clause. By a codicil he gave power of sale to his executors. In an action to construe the will the trial court found no satisfactory evidence of an intent on the part of the testator to charge his real estate or any part

of it to the payment of legacies, and held that his real estate was not so charged. For the Court of Appeals, Judge Folger, said:

"The personal estate of a testator is to furnish the fund for the payment of legacies. This is the general rule. But the personal estate may be entirely exonerated, or the real estate may be made to aid the personal, if there be express direction to that effect in the will, or if such be the clear intent of the testator to be gathered from its provisions. In this case there is not found in the will express direction."

Referring to the power of sale given to the executors by the codicil:

"There are but two purposes disclosed by the will. One is the creation of the fund for the improvement, by the application of the income thereof, of the cemetery lot. The other is the payment of the various legacies given by the will. It is plain that the testator was earnest and sincere in the gift of these legacies. They are made with purposeful discrimination and thoughtfulness. The claims of blood are remembered and considered. Gratitude for favors done and kindness shown enters into them. So does a design to reward faithful service. They were none of them made in a trifling disposition nor without cordiality. They were not meant to be nugatory or unavailing. When we find, then, after the testator has made his will, and after an interval for consideration, a power given by the codicil to his executors to sell any and all parts of his real estate in their discretion, * * * and there appears no other cause for giving such power, nor any other considerable object for its exercise than the possible need of money for the payment of the legacies, we find there the intent of the testator manifested that the real estate should be converted, if need be, in aid of the personalty, so that the legacies might not go unprovided for. * * * As in the contemplation of the will and codicil there was substantially no need of money, save for the payment of legacies, so the power to sell to meet that need must be to get money for that payment."

And the judgment of the General Term reversing the trial court was affirmed.

In Kalbfleisch v. Kalbfleisch, 67 N. Y. 354, where legacies were not expressly charged upon real estate, but by a codicil the executors were given a power to sell, Folger, J., said:

"When, then, we find in this codicil this power of sale, with no other purpose hinted at, and with no other object appearing for the exercise of it, than to make sure of a fund for these pecuniary legacies, we are led, as we were by like considerations in Taylor v. Dodd, to conclude that the testator meant that the residuary real estate should, or might be, converted in aid of the personalty. We said in that case, which is applicable here: 'As, in the contemplation of the will and codicil, there was substantially no need of money, save for the payment of the legacies, so the power to sell to meet that need must be to get money for that payment.'"

In Hoyt v. Hoyt, 85 N. Y. 142, in an action brought to have legacies charged upon real estate: Folger, C. J., said:

"There is no express direction in this will that these legacies be charged upon the real estate. Yet legacies may be charged upon real estate without express direction in the will, if the intention of the testator so to do can be fairly gathered from all the provisions of the will, and extraneous circumstances may be considered in aid of the terms of the will. The will, in this case is lean of the clauses and expressions that have been mainly rested upon in the earlier adjudications of this state as showing that intention. It does not direct the legacies to 'be first paid,' and then devise the real estate; it does not devise the real estate, nor the remainder of the real and personal estate, 'after the payment of the legacies'; it does not devise the real estate to a person in his own right, or as executor, and expressly direct him to pay the legacies. It does not make a residuary devise of 'all not herein other-

wise disposed of.' These several forms of expression have been held to indicate an intention in the testator to charge the payment of the legacies upon the real estate devised. None of them are here. * * * It is assumed that no man, in making a final disposition of his estate, will make a legacy, save with the honest, sober-minded intention that it shall be paid. Hence, when from the provisions of a will prior to the gift of legacies it is seen that the testator must have known that he had already so far disposed of his personal estate as that there would not be enough left to pay the legacies, it is reasoned that the bare fact of giving a legacy indicated an intention that it shall be met from real estate. So it was reasoned in Goddard v. Pomeroy, 36 Barb. 546–556."

There was a power of sale given by the codicil in this case, and the court again said:

"It is so, then, that this power of sale thus given and thus worded is of much significance in getting at the intention of the testator. And we can but draw from it that it was his purpose that these legacies should be met by money obtained from a sale of some or all of the lands. We think that these considerations fairly lead to the conclusion that it was the intention of the testator that these legacies should be paid at all events, and that all parts of his estate should be liable for the payment."

In McCorn v. McCorn, 100 N. Y. 511, 3 N. E. 480, in an action to have a legacy adjudged to be a charge upon the real estate, Finch, J., said:

."Whether a legacy is charged upon the real estate of the decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances which aid in the interpretation of that language, and help to disclose the actual intention, may also be considered. * * * His personal estate was insufficient even to pay his funeral expenses and the two legacies to the widow and son were mere mockeries unless meant to be a charge upon the real estate. The testator must have known that he has no personal estate with which to pay the smallest portion of his bequests, and unless he meant to charge them upon the land, we must impute to him the deliberate and conscious intention of making bequests to his wife and son which he knew could never be paid. * * * The situation is such that all possibility of innocent mistake is removed, and the facts drive us to the alternative of believing that the testator in making his last will, under the solemnity of approaching death, indulged in bequests known to be useless and vain, or meant that they should be paid from the only possible source. No reasonable intelligence can hesitate to draw the latter inference."

In Irwin v. Teller, 188 N. Y. 25, 80 N. E. 376, it was found by the trial court that testator left no personal property. The court said:

"Starting out with these findings, the conclusion follows under the settled law of this state that these legacies are a charge upon the real estate of the plaintiffs devised to them by the testator. In Brill v. Wright, 112 N. Y. 129 [19 N. E. 628, 8 Am. St. Rep. 717], this question was thoroughly discussed by Andrews, J.: The learned judge says: '* * * We think the cases in this state establish these two propositions: First, that general language in a will giving legacies, followed by the usual residuary clause, is alone insufficient to charge the legacies on the realty; and, second, that such language will justify such charge if it is made to appear by extrinsic circumstances, such as may under the rules of law be resorted to, to aid in the interpretation of written instruments, that it was the testator's intention that the legacies should be charged on the land.' After quoting Hoyt v. Hoyt, the court proceeded: 'Since this was written in 1881, the courts have examined extrinsic facts to ascertain the intention of the testator, as is evidenced by the cases already cited.' "

In Briggs v. Carroll, 117 N. Y. 288, 22 N. E. 1054, Judge Finch writing for the court cites with approval Brill v. Wright, supra, and

McCorn v. McCorn, supra. Referring to the merits of the case in which he was writing he said:

"The testator by his will gave to his wife a legacy of $2,500 to be accepted by her in lieu of dower; to his son Charles $1,500, 'to be held and used by his mother as necessity might require for his education'; and to his grandson, the plaintiff, $500. * * * Here were legacies of $4,500, with but $1,500 worth of personal property out of which to pay them. One of these was in lieu of the wife's dower, and another for the education of the son Charles. The declared purpose of each gift leads strongly to the inference that the testator did not suppose that they would, or mean that they should, abate, and be largely reduced. * * * Either he intended to sacrifice the comfort and welfare of his wife and son Charles for the benefit of his older and married children, and deliberately continue to make their situation worse by putting personal estate into land and incurring debts, or he supposed that their legacies would rest upon his real estate. I think we are justified in holding that the latter was his understanding of the will."

In Richardson v. Richardson, 145 App. Div. 540, 129 N. Y. Supp. 941, Rich, J., said:

"The testator knew when he executed his will that his personal property was insufficient to pay even the amount he had determined his executors should receive for their services, and it is not to be presumed that he intended to prefer the corporations to the exclusion of his own kindred, and it is noticeable that he disposed of both his real and personal property as a whole, and without making any distinction between real and personal property. I think that it was the intent of the testator that his real and personal estate together were to furnish the fund out of which the legacies were to be paid. The deficiency existed at the time the will was executed; it is so large and so obvious as to preclude any possible inference that the testator did not know and realize it, and it must be held that the legacies are a charge upon the real property of the decedent. McCorn v. McCorn, 100 N. Y. 511 [3 N. E. 480]; Briggs v. Carroll, 117 N. Y. 288 [22 N. E. 1054]; Hogan v. Kavanaugh, 138 N. Y. 417 [34 N. E. 292]; McManus v. McManus, 179 N. Y. 338 [72 N. E. 235]; Irwin v. Teller, 188 N. Y. 25 [80 N. E. 376]."

The heirs appellant rely upon Fries v. Osborn, 190 N. Y. 35, 82 N. E. 716, 19 L. R. A. (N. S.) 457, but that case is clearly distinguishable. In that case there was no mention or disposition of any real estate, and there was no power of sale conferred upon the executors. Judge Hiscock said:

"Many cases have been cited by the learned counsel for the respondent, and many more might have been added in which extrinsic evidence has been allowed to aid the court in interpreting provisions of wills which gave legacies and disposed of real estate, and whereby the conclusion was aided that the devise of the real estate was made subject to the payment of the legacies. But no case has been cited, or, as we believe, can be found, in which it has been decided that evidence extrinsic to the will may be made the basis of construing into the will provisions charging real estate with the payment of legacies, where the will as actually written by the testator contained not one word even indirectly relating to this subject, and was absolutely silent upon the subject of the testator's real estate, not taking notice or disposing of it in any way whatever."

In the case at bar there was a disposition of certain of the real estate, and there was a power of sale.

[3, 4] Second. I think the learned Special Term was right in determining that the legacy of $50,000 to the Overlook Hospital was valid. For some time before and at the time of testator's death Wil-

liam H. Lawrence conducted a hospital at Summit, N. J., known as Overlook Hospital. It was neither incorporated nor was it an unincorporated association. It was conducted at the expense of Lawrence for the benefit of all classes of persons who might be in need of medical or surgical treatment, without distinction as to race, creed, or color, and free of charge as to any one unable to pay therefor. The hospital consisted of three buildings upon a plot of four acres of land. It contained public and private wards, a dispensary, ambulance service, and training school for nurses, employed a corps of physicians and surgeons and trained nurses, it furnished treatment to about 2,000 patients yearly, of whom about 300 defrayed the cost of their treatment and 150 were paid for by various charitable organizations. After testator's death, and in December, 1912, said Overlook Hospital became incorporated under the laws of New Jersey. The court has found as a matter of fact that at the death of the testator the law of New Jersey recognized, and still recognizes, the principles of the English statute relating to Charitable Uses (St. 43 Eliz. c. 4) as being there in force; and gifts in perpetuity for charitable uses are not to be defeated on account of the indefiniteness of the beneficiaries, or because there be no trustee appointed capable of executing the trust.

The trustees of the Sailors' Snug Harbor v. Carmody, 211 N. Y. 286, 105 N. E. 543, is the latest of a long line of cases in this state construing chapter 701 of the Laws of 1893:

"In construing the statute, this court held that the Legislature intended by that law to restore the law of charitable trusts as declared in the case of Williams v. Williams, 8 N. Y. 525, which holds that the law of charitable uses as recognized in England prior to the revolution was in force in this state. Allen v. Stevens, 161 N. Y. 122 [55 N. E. 568]; Matter of Griffin, 167 N. Y. 71 [60 N. E. 284]; Bowman v. D. & F. M. Society, 182 N. Y. 494 [75 N. E. 535]; Matter of Robinson, 203 N. Y. 380 [96 N. E. 925, 37 L. R. A. (N. S.) 1023]; Matter of Cunningham, 206 N. Y. 601 [100 N. E. 437]."

We think that this legacy created a trust for charitable uses, and that if no trustee competent to take had been named, the legacy would not have failed. Matter of Miller, 149 App. Div. 113, 133 N. Y. Supp. 828. In Manley v. Fiske, 139 App. Div. 665, 124 N. Y. Supp. 149, affirmed 201 N. Y. 546, 95 N. E. 1133, the court, in sustaining a gift as for charitable uses, said:

"It is next contended, however, that the statute was intended only to save trusts for charitable uses, and that no trust was created. It is true that there are no express words creating a trust, as there are no express words of gift; but it is quite plain that a trust was intended. A trust is almost inseparably involved with a gift for charitable uses, and the statute provides for the case of a failure to select a trustee as well as for the case of indefiniteness of beneficiary."

A hospital is one of the earliest forms of charitable uses, and a gift to endow beds in a hospital in perpetuity obviously imports a charitable trust. As the Overlook Hospital is now incorporated and is by its charter empowered to maintain beds and to receive legacies, bequests, and donations, by will or otherwise, for such purposes, and the by-laws of said hospital provide that free beds may be endowed

148 N.Y.S.—45

in perpetuity, the decision of the Special Term that the Overlook Hospital is entitled to take said legacy is right.

[5] Third. The New York City Mission and Tract Society appeals from so much of the judgment as decrees the legacy of $100,000 given to it is invalid. This society was incorporated by special act (chapter 63 of the Laws of 1866, as amended by chapter 27 of the Laws of 1870, chapter 418 of the Laws of 1890, and chapter 505 of the Laws of 1896). The codicil which contains the legacy of $100,000 to this society was executed eight days prior to the death of the testator, and hence was within two months thereof. Section 19 of the Decedent Estate Law (chapter 13, Consol. Laws, chapter 18, Laws 1909, formerly section 6 of chapter 319 of the Laws of 1848) provides that no—

"devise or bequest to any institution or corporation formed under the Laws of 1848, ch. 319, * *. * shall be valid, in any will which shall not have been made and executed at least two months before the death of the testator."

In Kerr v. Dougherty, 79 N. Y. 327–340, the court held that a bequest to this identical society was invalid because of the provision of chapter 319 of the Laws of 1848. The appellant urges that, as section 19 of the Decedent Estate Law was absolutely repealed by chapter 857 of the Laws of 1911, which became a law on July 29th of that year, more than two weeks before the admission of decedent's will to probate, and less than a month after he died, that it is entitled to take. But the will speaks from the time of the death of the testator. The rights of legatees, heirs, and next of kin were then fixed. The decision of the court below was right.

Fourth. The New York Association for Improving the Condition of the Poor appeals from so much of the judgment as adjudges that the legacy of $100,000 to it is invalid, and the legacy of $50,000 to the Fresh Air Home for Crippled Children, known as "Sea Breeze," is invalid, and the Attorney General appeals from so much of the judgment as declares the latter legacy invalid.

The New York Association for Improving the Conditions of the Poor was incorporated December 16, 1848, under the provisions of chapter 319 of the Laws of 1848. Therefore the bequest to it of $100,-000 was invalid under Kerr v. Dougherty, supra; Stephenson v. Short, 92 N. Y. 433; Matter of Cooney, 112 App. Div. 659, 98 N. Y. Supp. 676. As to the Sea Breeze Hospital the court has found: By the gift to the Fresh Air Home for Crippled Children, known as "Sea Breeze" Coney Island, N. Y., contained in subdivision 42 of article 5 of the codicil to the last will and testament of Smith Ely, the testator intended the hospital for crippled children at Coney Island, part of the work known as "Sea Breeze," which is affiliated with the New York Association for Improving the Conditions of the Poor. The said hospital at Sea Breeze is an unincorporated charity, which though affiliated with the New York Association for Improving the Condition of the Poor is a self-governing body. It is managed by boards and officers of the corporation with the assistance of an advisory medical board exclusively attached to this hospital, and not to any other activity of the New York Association for Improving the Condition of the Poor. And as conclusion of law that the said legacy is invalid. Mr. Opdycke, the

vice president of the New York Association for Improving the Condition of the Poor, testified:

"Sea Breeze Home, for convalescent work and rest cure arrangements for the old and babies, and so forth, is carried on solely, or supervised solely, by officers and committees of our association. The hospital work is carried on, not only by those officers and members of the board of trustees, but also by a medical advisory board, who have nothing whatever to do with our purely summer work. * * * Q. The Sea Breeze Hospital Association, as now known, is an autonomous body? A. Except in finances I should say that it was. It receives its own money and spends its own money. The actual treasury—the custodian of the funds, which are quite carefully entered and accounted for and separately audited—those funds are actually in the safe-keeping of the association as their custodian. Q. So that it is only in that respect that it is an activity of the A. I. C. P.? A. That is not strictly true. We have a certain community of interests in this, that that hospital has been one of our most valuable assets for the purpose of publicity—soliciting subscriptions through the summer. Q. But the hospital has its own government? A. It has its own government apart from the usual routine activities of the association. Q. So perhaps it was always more or less an offshoot from the A. I. C. P.? A. The relation has not changed from the start. It was always an offshoot and always a demonstration and experiment. I have resolutions of our board on that point, if you care for them."

I regret to be forced to the conclusion that Sea Breeze is in fact the New York Association for Improving the Condition of the Poor, and that, as a bequest to that association under this codicil is invalid, this bequest is invalid.

[6] The absolute gift cannot be sustained to Sea Breeze if it be considered as an unincorporated voluntary association independent of the New York Association for Improving the Condition of the Poor, under Fralick v. Lyford, 107 App. Div. 543, 95 N. Y. Supp. 433, affirmed 187 N. Y. 524, 79 N. E. 1105.

[7] Fifth. The heirs appeal from that part of the judgment which provides that certain rents, amounting to $1,355.42, which became due in advance on the 1st day of July, 1911, under certain leases made by the testator upon property of which the testator died seised, and which was not specifically devised by him, belonged to testator's estate and be distributed as part thereof. The testator died at 1 o'clock a. m. July 1, 1911. Section 2712 of the Code of Civil Procedure provides:

"The following shall be deemed assets and go to the executors or administrators, to be applied and distributed as part of the personal property of the testator or intestate, and be included in the inventory * * * 7th rent reserved to the deceased which had accrued at the time of his death."

There seem to be no New York cases upon the precise point here involved, but it is the general rule that the law does not take into account fractions of a day. As therefore the testator was alive and in possession of the property upon the day upon which the rents accrued, we conclude that the Special Term correctly decided that said rents belonged to the estate.

The judgment appealed from should be affirmed, with costs to all respondents filing briefs upon the appeal.

INGRAHAM, P. J., and HOTCHKISS, J., concur.

McLAUGHLIN and SCOTT, JJ., concur, except as to Sea Breeze, as to which they dissent.