Anna M. Irwin et al., Individually and as Executrices of Jacob V. B. Teller, Deceased, Appellants, v. David Teller et al., Respondents.

1. Will — When Legacy Chargeable upon Real Estate Acquired After Execution of Will. A will operates from the time of the testator's death, and the real estate owned by him at that time, although acquired after the execution of his will, is chargeable with the payment of legacies that are a lien upon realty, especially where the provision of the will charging the payment of legacies upon his real estate is restated

and republished in a codicil thereto, after the acquisition of the real estate not owned at the time of the execution of the will.

2. WILL — CONSTRUCTION OF PROVISION FOR ANNUITY AND LEGACY TO BE PAID BY RESIDUARY LEGATEE, WHEN CHARGEABLE UPON REAL ESTATE. A testator, who had at the time of the execution of his will no personal property except furniture and other household goods which he bequeathed to his wife absolutely, devised and bequeathed all of his property to his wife for her use and benefit during her life; upon her death he devised certain farms to two of his sons, subject to an annuity to be paid to a third son in his lifetime, and legacies to be paid to the next of kin of such son after his death; the residue and remainder of his property testator devised and bequeathed to his two daughters, subject to the payment by each of them of a certain annuity to his third son, directing each of them to set apart, out of the personal property bequeathed to her, a sum large enough to produce the prescribed annuity and hold the same in trust to pay the annuity from the income thereof, any deficiency to be made up out of her own means, but not to be a charge upon her property, and upon the death of such son to pay over and transfer such annuity fund to his next of kin; testator died possessed of no personal property and none came into the possession of his daughters under the residuary clause of the will, so that they were unable to set apart the annuity trust funds as directed and there never was such a fund in their hands, but they paid, during the lifetime of the brother, the annuity to which he was entitled; the only property which passed to the daughters under the residuary clause was four lots or parcels of land the value of which is not proved, one of which was subject to a mortgage. *Held*, that the two legacies — consisting of the amount of the two trust funds which testator directed his daughters to set apart to produce the annuity for his third son — are chargeable upon the real estate devised to them by the residuary clause of the will; since it is apparent, from the provisions of the will construed in the light of the extrinsic circumstances, that such was the intention of the testator.

*Irwin* v. *Teller*, 115 App. Div. 17, affirmed.

(Argued January 24, 1907; decided February 26, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 25, 1906, affirming a judgment of Special Term construing the will of Jacob V. B. Teller, deceased.

The following facts, among others, were found by the trial court: Jacob V. B. Teller died in the town of East Greenbush, Rensselaer county, on the 6th of February, 1892, leaving him surviving his widow, Martha T. Teller, two daughters,

Anna M. Irwin and Margaret M. Strong, and three sons, David A., William and Elisha P., as his sole surviving heirs at law and next of kin.

Jacob V. B. Teller on the 26th of January, 1885, made his last will and testament; on October 13th, 1888, a first codicil, and on November 13th, 1890, a second codicil. The will and codicils were duly admitted to probate on the 16th of November, 1892, and letters testamentary were granted to his daughters Anna M. and Margaret M., who duly qualified: No inventory was made of the personal estate of the testator.

The twenty-fifth finding reads as follows : " That at the time when testator made his will, namely, January 26th, 1885, he had no money or other personal property which could be set apart by either of his said daughters, as provided by said will, for the payment to Elisha or to his children in case of his death, and that he had no personal property at that time." The seventh finding reads as follows : " That Jacob V. B. Teller left no personal property at the time of his death, except household furniture, pictures, wearing apparel and books, which were by said will bequeathed absolutely to his wife, and that no personal property came into the possession of Anna M. Irwin and Margaret M. Strong or either of them, either as legatees or executrices of the last will and testament of Jacob V. B. Teller, deceased."

It is further found that the testator died seized in fee and possessed of the following real estate : Property known as numbers 51 and 59 Hudson avenue and certain property on Hawk street, all located in the city of Albany, N. Y.; also certain farm lands in the town of East Greenbush, Rensselaer county ; also property located in the village of Greenbush, now a part of the city of Rensselaer. The testator died seized of no other real property.

The will provided for his wife as follows : " I give, devise and bequeath to my beloved wife, Martha T. Teller, all my property of every description, both real and personal, for and during the term of her natural life, to receive and apply to her own use and enjoyment all of the income thereof and so

much of the principal as she may see fit, giving her full power to sell and convey all or any portion of my real estate. Upon her death I give, devise and bequeath my said property both real and personal, or so much as then remains thereof, as follows, believing that she will not sell my farm below mentioned."

The testator devised to his son William his farm in the town of East Greenbush, formerly belonging to William's grandfather, and being the same as owned by testator's brother Tobias at the time of his death. He also devised to his son David that portion of his homestead farm in the town of East Greenbush and fully described in the will, except eighty-seven acres more or less, disposed of as follows : " I give and bequeath one undivided third thereof to my son William in fee ; one undivided third thereof to my son David in fee, and the remaining undivided third thereof to my said sons, William and David, in trust nevertheless, as trustees, to receive the rents, issues and profits thereof and apply the same to the use of my son, Elisha P. Teller, during his life by paying the same to him semi-annually ; and on his death I devise such one-third, or the proceeds of sale thereof in case it shall have been sold, to his heirs at law." Then follow other provisions of the will not material at this time.

The will contains a residuary clause in favor of the daughters Margaret and Anna, the plaintiffs in this action ; also certain provisions bearing upon the annual payments to Elisha and the final payment to his next of kin. The residuary clause as to the daughters reads as follows : " All the rest and residue of my real and personal property, I devise and bequeath upon my wife's decease to my daughters, Margaret M. Strong and Anna M. Irwin, share and share alike, subject to said payment to their brother William, and subject also to the payment by each of them of the sum of $125.00 a year to my son, Elisha P. Teller, during his life, in half yearly payments, and in order to secure such payment I direct that each of them shall set apart out of the personal property hereby bequeathed to her the sum of $2500.00 and invest

the same, and hold it in trust and pay the income thereof to
the amount of $125.00 a year to said Elisha, and if there be
any deficiency in the income she shall make up what it falls
short of such amount of $125.00 out of her own means, and
shall not be entitled to commissions or compensation as trus-
tee, but payment of such deficiency shall be only a personal
debt to Elisha and not a charge upon her property.   *   *   *
In the case of the trust funds directed to be held by each of
my daughters for said Elisha, such funds shall on the death
of said Elisha be paid over and transferred to his next
of kin."

The will contains in this residuary clause certain provisions
relating to the payments to be made to Elisha, and after his
death to his next of kin that are immaterial at this time.

The first codicil refers to a matter between David and
William not material; the second codicil reduces the annual
payment to be made by the children of testator to Elisha to
$75.00 a year.

It is found that the farms devised, respectively, to the sons
William and David were subsequently conveyed to them by
the testator.

The twenty-sixth finding reads as follows: "That from the
time of the death of the testator the legacy of $75.00 a year
was paid to Elisha by Margaret M. Strong and Anna M. Irwin
out of their own property." The twenty-seventh finding
reads: "That for some time prior to the death of Elisha the
$75.00 a year directed by the will to be paid by Margaret M.
Strong and Anna M. Irwin to Elisha, was paid by them to
Elisha's wife, and that this was paid by them out of the estate
of William Teller." The twenty-eighth finding reads: "That
the premises in this report described as 59 Hudson avenue
were devised to Anna M. Irwin and Margaret M. Strong, sub-
ject to a mortgage of $3,000."

Martha T. Teller, the widow of testator, died July 6th, 1893.

*Murray Downs* for appellants.  The plaintiffs hold the real
estate devised to them free from any lien because the lan-

guage of the will does not charge such real estate with the payment of the legacies, but expressly declares that such legacies and annuities are to be paid out of the " personal property hereby bequeathed." (*Morris* v. *Sickly*, 133 N. Y. 456; *Van Nostrand* v. *Moore*, 52 N. Y. 18; *Wadsworth* v. *Murray*, 161 N. Y. 284; *Brill* v. *Wright*, 112 N. Y. 129; *Washbon* v. *Cope*, 144 N. Y. 297.)

*John A. Stephens* for respondents. The legacy of $2,500 directed to be paid by each of his daughters, Anna M. Irwin and Margaret M. Strong, to the next of kin of Elisha on his death, was a charge upon the real estate of decedent, devised to said daughters. (*Brill* v. *Wright*, 112 N. Y. 129; *Briggs* v. *Carroll*, 117 N. Y. 288; *McCoen* v. *McCoen*, 100 N. Y. 511; *Hoyt* v. *Hoyt*, 85 N. Y. 147; *Matter of James*, 146 N. Y. 78; *Stokes* v. *Weston*, 142 N. Y. 433; *Roe* v. *Vingut*, 117 N. Y. 212; *Tilden* v. *Green*, 130 N. Y. 152; *Byrnes* v. *Stillwell*, 103 N. Y. 458; *Fothergill* v. *Fothergill*, 80 Hun, 316.) The making of each codicil was a republication of the whole will; the provisions of the former could be treated as if embodied in the latter, and both as if executed and published at the same time. (*Kip* v. *Van Cortland*, 7 Hill, 346; *Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375; *Caulfield* v. *Caulfield*, 85 N. Y. 153; *Moffett* v. *Elmendorf*, 82 Hun, 470.)

Edward T. Bartlett, J. This litigation arises over the will of Jacob V. B. Teller, late of the village of East Greenbush, now city of Rensselaer, Rensselaer county, and certain extrinsic circumstances. The will and the findings are lengthy, but the facts material to this controversy are exceedingly simple. This action was brought by the two daughters of the testator and asks for a judgment determining the rights of the parties in and to the property, real and personal, disposed of by the will.

The testator died leaving five children, the two plaintiffs, and three sons, David, William and Elisha, seized of what is

N. Y. Rep.]  Opinion of the Court, per EDWARD T. BARTLETT, J.

known as the Rensselaer county farm property, a lot in the city of Rensselaer, and certain real estate in the city of Albany. The farm property was devised and afterwards conveyed to William and David, subject to a certain annuity to be paid to Elisha in his lifetime and legacies to be paid to his next of kin after his death.

The testator, by the residuary clause of his will, bequeathed and devised to his two daughters by a general provision the residue of his personal property and real estate. The effect of this disposition was to vest in the daughters the testator's personal property, if any, the lot in the city of Rensselaer (formerly the village of Greenbush), and three parcels of real estate in the city of Albany, consisting of certain premises in Hawk street and numbers 51 and 59 Hudson avenue. The values of this real estate were neither proved nor found. The only finding having any bearing whatever upon the value is to the effect that 59 Hudson avenue was devised to the plaintiffs, subject to a mortgage of $3,000. It is found that the testator was possessed of no personal property whatever either at the time of making the will or at his death.

This appeal presents the single question whether the two legacies of $2,500.00 each, payable by the daughters of the testator (the plaintiffs in this action) to the next of kin of Elisha after his death, are chargeable on the real estate devised to them by the residuary clause of the will.

It is found that since the testator's death in February, 1892, the plaintiffs have paid the annuity of $75.00 a year out of their own property; it is also inconsistently found that for some time prior to the death of Elisha the $75.00 a year was paid by the plaintiffs to Elisha's wife out of the estate of William Teller. Under the residuary clause of the will this annuity was $125.00 a year, but it was cut down to $75.00 by the second codicil executed on the 13th of November, 1890.

A preliminary point is made by plaintiffs appellants that certain real estate purchased by the testator after the execution of his will and devised to them, cannot be made charge-

able with the payment of these legacies even if the real estate held at the time of the execution of the will is subjected to this lien.   A will speaks from the time of the testator's death, and the real estate owned by him at that time is chargeable with the payment of legacies that are a lien upon realty.   It is to be remarked that at the time of the execution of the second codicil the testator was the owner of all the real estate of which he died seized.   The codicil was a re-execution and re-publication of the original will, and is a further answer to this preliminary point.

However improbable it may seem that the testator died possessed of no personal property, in view of the elaborate provisions of the will based on the assumption that his estate was made up in part of personalty, and the additional fact that he purchased more real estate after the execution of the will, nevertheless we are bound by the finding, unanimously affirmed by the Appellate Division, that he was possessed of no personal property, either when executing the will or at the time of his death.

Starting out with these findings, the conclusion follows under the settled law of this state that these legacies are a charge upon the real estate of the plaintiffs devised to them by the testator.   In *Brill* v. *Wright* (112 N. Y. 129) this question was thoroughly discussed by ANDREWS, J.   The learned judge says: " Where in a will general legacies are given, followed by a gift of all the rest and residue of the real and personal property of the testator, by a residuary clause in the usual form and nothing more, it must now, we think, be regarded as the established rule in this state that the language of the will alone unaided by extrinsic circumstances is insufficient to charge the legacies upon lands included in the residuary devise.   *   *   *   The cases of *Wiltsie* v. *Shaw* (100 N. Y. 191) and *McCorn* v. *McCorn* (100 N. Y. 511) illustrate very clearly the attitude of this court upon the subject.   Both were cases substantially of wills giving general legacies, followed by the usual residuary clause.   In each the question was whether the legacies were charged on

the lands.   In *Wiltsie* v. *Shaw* it appears that the testator left a large personal estate, ample for the payment of debts and legacies, and no other circumstances appearing, it was held that a legacy given by the testator in his will, in trust for a son, was not a charge on the lands, which passed to the testator's daughter under the residuary clause.   In *McCorn* v. *McCorn* the legatees were the wife and son of the testator, and the gift of the legacies was followed by the usual residuary clause, under which all the testator's real estate passed to four other children.   It appeared that the will was made the day before the testator's death, and that his personal estate was insufficient ₄to pay his funeral expenses.   The legacies to the testator's wife and son were mere pretenses, ' unless meant to be a charge on the real estate.'   Under these circumstances the court held that the legacies were intended to be charged on the realty, and sustained the claim of the legatees.   We think the cases in this state establish these two propositions : *First.* That general language in a will giving legacies, followed by the usual residuary clause, is alone insufficient to charge the legacies on the realty ; and, *second*, that such language will justify such charge if it is made to appear by extrinsic circumstances, such as may under the rules of law be resorted to, to aid in the interpretation of written instruments, that it was the testator's intention that the legacies should be charged on the land."

In *Hoyt* v. *Hoyt* (85 N. Y. 142) it was held that legacies may be charged upon real estate without express direction, if the intention of the testator so to do can be fairly gathered from the provisions of the will ; and extrinsic circumstances may be considered in aid of the terms of the will.   FOLGER, J. (at page 147), states : " It is assumed that no man, in making a final disposition of his estate, will make a legacy, save with the honest, sober-minded intention that it shall be paid. Hence, when from the provisions of a will prior to the gift of legacies it is seen that the testator must have known that he had already so far disposed of his personal estate as that there would not be enough left to pay the legacies, it is rea-

3

soned that the bare fact of giving a legacy indicates an inten-
tion that it shall be met from real estate.  So it was reasoned
in *Goodard* v. *Pomeroy* (36 Barb. 546–556).  Courts have been
urged to go a step further, and to say, that when the facts of
the estate, *aliunde* the will, show that the testator must have
known that if a legacy was to be paid only from personal
estate, it would be a barren gift, he must have intended to
subject the real estate to a liability for it."

Since this was written in 1881, the courts have examined
extrinsic facts to ascertain the intention of the testator, as is
evidenced by the cases already cited.

In *Briggs* v. *Carroll* (117 N. Y. 288), Judge FINCH writing
for the court, cites with approval *Brill* v. *Wright* (*supra*) and
*McCorn* v. *McCorn* (*supra*).  Referring to the merits of the
case in which he was writing, he said : " The testator by his
will gave to his wife a legacy of $2,500, to be accepted by her
in lieu of dower; to his son Charles $1,500.00, ' to be held and
used by his mother as necessity might require for his educa-
tion' ; and to his grandson, the plaintiff, $500.00.    *    *    *
Here were legacies of $4,500.00 with but $1,500.00 worth of
personal property out of which to pay them.  One of these
was in lieu of the wife's dower, and another for the education
of the son Charles.  The declared purpose of each gift leads
strongly to the inference that the testator did not suppose that
they would, or mean that they should, abate, and be largely
reduced.    *    *    *    Either he intended to sacrifice the com-
fort and welfare of his wife and son Charles for the benefit
of his older and married children, and deliberately continued
to make their situation worse by putting personal estate into
land and incurring debts, or he supposed that their legacies
would rest upon the real estate.  I think we are justified in
holding that the latter was his understanding of the will."

What language could be more apposite to the case at bar ?
It is apparent from the provisions of the will before us that
Elisha was an unfortunate son who needed a father's care.
The testator sought to discharge that duty in drawing his will,
and a portion of his scheme was contained in the residuary

clause which devised and bequeathed to his two daughters all his real and personal estate not disposed of by the previous provisions of the will.   He not only directed each of his daughters to pay to Elisha the sum of $125.00 a year, afterwards cut down to $75.00 by the second codicil, but provided that each of them should set apart out of the personal property he was bequeathing to them the sum of $2,500.00, and invest the same, and hold it in trust, to be paid to the next of kin of Elisha upon his death.   The testator also imposed, substantially, similar provisions upon the devises made to his sons David and William.   It is not to be assumed that this testator inserted such provisions as these in his will unless he was of the opinion that there would be a sufficient amount of personal property passing to his daughters at the time of his death, thereby enabling them to carry out his requirements of setting apart a trust fund of $2,500.00 each for the next of kin of his unfortunate son Elisha.

It is not to be presumed that this testator contemplated the slightest uncertainty as to the payment of these legacies to the next of kin of Elisha.   He had made ample provision for all his other children except Elisha, and it was clearly his desire to provide for one who could not care for himself and his next of kin.   It is natural to presume that the testator was most solicitous in regard to the carrying out of the provisions relating to Elisha and his children.   If it be the fact that testator owned no personal property, either at the time of making the will or when he died, and we must assume that such was the situation under the findings, we are left only to conjecture that he met with subsequent reverses, or made changes in his investments.

The judgment of the Appellate Division appealed from should be affirmed, with costs.

HAIGHT, J. (dissenting).   This action was brought to obtain a construction of the last will and testament of Jacob V. B. Teller, deceased.   The testator, after making provisions for his widow and sons, provided that " All the rest and residue

of my real and personal property I devise and bequeath upon my wife's decease to my daughters Margaret M. Strong and Anna M. Irwin, share and share alike, subject to said payment to their brother William, and subject also to the payment by each of them of the sum of $125 a year to my son Elisha P. Teller during his life, in half-yearly payments, and in order to secure such payment I direct that each of them shall set apart out of the personal property hereby bequeathed to her the sum of $2,500, and invest the same and hold it in trust and pay the income thereof to the amount of $125 a year to said Elisha, and if there be any deficiency in the income she shall make up what it falls short of such amount of $125 out of her own means, and shall not be entitled to commissions or compensation as trustee, but payment of such deficiency shall be only a personal debt to Elisha and not a charge upon her property." The will further provided that with reference to the trust fund directed to be held by each of his daughters for the benefit of his son Elisha, that upon the latter's death such funds shall " be paid over and transferred to his next of kin." By a codicil he reduced the amount to be paid to Elisha by each daughter annually from $125 to $75.

The testator died leaving no personal property other than that which had been specifically bequeathed to his sons and wife, and consequently no personal property came to the hands of the daughters under the residuary clause of the will. The only property that came to them was a lot on Hawk street and two lots on Hudson avenue in the city of Albany, and a vacant lot located on Second street in the city of Rensselaer 25 feet front by 100 feet deep, which is represented to be of little value. One of the Hudson avenue lots was so heavily incumbered that it was subsequently sold upon the foreclosure of a mortgage and the title passed to other persons. The other lot on Hudson avenue was incumbered by a mortgage for $3,000.

The daughters, receiving no personal property from the testator, were unable to set apart the trust of $2,500 each, and there

has never been such a fund in their hands. They, however, out of the estate coming to them, annually paid the sum of $75 each to their brother Elisha during his lifetime. The respondents, the children of Elisha, now demand the payment to them of the sum of $2,500 from each of the daughters, making a total of $5,000, and ask that it be made a charge upon the real estate devised to the daughters. The question is, therefore, presented as to whether the testator so intended.

In determining this question it must be borne in mind that it distinctly appears that at the time of the testator's death his widow held in her name a number of mortgages upon real estate amounting to a number of thousands of dollars and that in making this provision he supposed that he was possessed of sufficient personal property to make up the "trust fund," as he called it.

The testator at the time of making his will was well advanced in years, and he first gave to his wife the use of all his property of every description, both real and personal, during the term of her natural life, giving her full power to sell and convey and to use so much of the principal as she might see fit. He then upon her death disposed of that which should be left to his sons and daughters. His widow survived him about a year. It is not uncommon for an aged husband who has lived with his wife for many years to regard the property taken in the name of the wife as his, and attempt to dispose of it by will. But, however it may be in this case, one fact is apparent, and that is he did not intend to disinherit his daughters. When he came to securing the payment of the annuity to his son, he directed that each of his daughters shall set apart "out of the income of the personal property hereby bequeathed to her the sum of $2,500." It will be observed that he specifically limits the fund to be set apart to the *personal property bequeathed* to each daughter. Then fearing that there might be some deficiency in the "income" — not in the principal — he requires the daughter to make up such deficiency, if any, and pay the same out of her own means. But while requiring the payment of such deficiency

out of their own means, he makes that only a personal debt to Elisha, and then for the purpose of removing all doubt, provides that it shall not be a charge upon the daughters' property. In other words, it shall not be a lien upon their real estate. Then again, upon the death of Elisha he does not direct that the daughters shall pay to his grandchildren the sum of $5,000, but he does direct that "such fund," referring to the fund to be set apart by them out of the personal property, shall be paid over and transferred to his next of kin. I, therefore, am of the opinion that the testator never intended that the $5,000 should be made a lien on the real estate devised to the daughters.

The judgment should be reversed and a new trial ordered, with costs to abide the final award of costs.

Gray, Hiscock and Chase, JJ., concur with Edward T. Bartlett, J.; Cullen, Ch. J., and Willard Bartlett, J., concur with Haight, J.

Judgment affirmed.