ANNA M. FERRIS, (JR.), Administratrix *cum testamento annexo*
of the Estate of Anna M. Ferris, deceased,

*vs.*

MATILDA FERRIS, ANNA M. FERRIS, (JR.), EDITH FERRIS,
KATHERINE LINCOLN FERRIS, WILLLIAM CANBY FERRIS,
HENRY FERRIS, ALFRED J. FERRIS, WALTER FERRIS, FRAN-
CES CANBY FERRIS, CHARLES HALLOWELL, Administrator
of Fanny F. Hallowell, deceased, BENJAMIN FERRIS, MARY
H. PRICE, WILLIAM FERRIS, JR., DEBORAH F. BLACKBURN,
ANNIE HAYFORD FERRIS HODGE, MARGARET FERRIS KEGLE,
GEORGE A. FERRIS, MATLIDA FERRIS, Executrix of
David Ferris, deceased, ANNA M. FERRIS, (JR.), Exec-
utrix of William Ferris, deceased, and EDWARD FERRIS.

*New Castle, July 25, 1916.*

A will of the residue, containing most of the estate, to life tenants,
thereafter to "be disposed of as follows," followed by legacies "devised
and bequeathed" aggregating $8,400, and then "whatever residue may
remain after legacies have been paid" to others, the testator leaving but
$328 net personal property, charged the legacies on the land, although no
power to sell land was expressly given to executors.

Extrinsic evidence is admissible to show character of the estate of
testator at the time of making the will, upon the issue whether a will
intends to charge land with legacies.

Under the statute an administrator with the will annexed may exer-
cise a power to sell lands given by the will to the executor.

In a suit to construe a will by administrator with will annexed in
which the holders of legal title to land charged with legacies, whether
heirs at law or devisees, are made defendants, such administrator may be
ordered to sell the land to pay legacies, provided such defendants do not
object, although no power of sale is given by the will to executors, espe-
cially where a power of sale may be implied from the will itself.

The holder of legal title to land charged with legacies is entitled to
hold the land subject to the legacies and to the right of the legatees to
enforce payment.

BILL FOR CONSTRUCTION OF WILL and order of sale of real estate. Anna M. Ferris by will directed her executors to pay her debts, made several specific bequests, and "all the rest and residue" of her estate she gave, devised and bequeathed to her two sisters, Deborah Ferris and Martha Ferris, and the survivor, for life. Item 4th was as follows:

"And after the deaths of my sisters Deborah Ferris and Martha Ferris it is my will that the property herein bequeathed to them shall be disposed of as follows:"

Then follow several gifts of money aggregating eighty-four hundred dollars, each containing the words "I give and bequeath." Item 11 provides as follows:

"And whatever residue may remain after all debts and legacies have been paid, except such items of personal property as may be mentioned in this will or otherwise hereafter I give and bequeath in equal portions to my brothers, David Ferris, William Ferris, and Edward Ferris, and if either of my said brothers should be deceased at the time of my death, and the distribution of the said residue, it is my will that his portion hereof shall go to his widow if living."

Executors were appointed, but no power was expressly given to them to sell any property. At the date of the will the testatrix had a life estate in certain real estate, a small amount of personal property and an undivided one-third interest in a lot of land and store building in Wilmington. At her death she still owned an undivided interest in the Market Street property and her personal estate. After deducting debts, funeral expenses and specific legacies, her personal estate amounted to $328.01, which was insufficient to pay legacies aggregating eighty-four hundred dollars. The testatrix, Anna M. Ferris, died November 17, 1890, and Deborah Ferris and Martha Ferris, her sisters, survived her, and the former died March 10, 1897, and the latter June 6, 1912.

The complainant represented that the legatees claimed that their pecuniary legacies were charged on the real estate, and that the complainant as administrator d. b. n. c. t. a. had power to sell the land and from the proceeds of sale pay the

legacies. Instructions were therefore asked. Not only were all the legatees made parties defendant, but also all persons who would be either devisees, or, in case of intestacy, her heirs at law.

Some of the defendants answered admitting substantially the allegations of the bill, and as to the others a decree *pro confesso* was taken. In their answer the heirs at law and devisees submitted themselves to the decision of the court, and the cause was heard on bill, answer, and testimony of witnesses taken before an examiner.

*John P. Nields*, for the complainant.
*Benjamin Nields*, for the defendants.

THE CHANCELLOR. A precedent of the learned Chancellor Bates may well be followed in deciding this case, and in *Rambo, Exr., v. Rumer, et al.*, 4 *Del. Ch.* 9 (1866), there is such a precedent. By will Rumer directed the payment of his debts by the executor; made several pecuniary legacies, each preceded by the words "I give and bequeath," two of the legacies being charged on the land; and then said: "As to the balance of my estate, if there be any I give and bequeath," etc. At his death the testator owned only one parcel of real estate, and his personal estate was insufficient to pay his debts. The executor by bill asked instructions; that the legacies be charged on the land; and for an order for the sale of it to pay the debts and then the legacies. The defendants to the bill were the legatees and the heirs at law were not included. Chancellor Bates found that all the legacies were charged on the real estate, considering that the gift of the balance of his estate made the whole estate, real and personal, an entire fund for all the purposes of the will, including payment of both debts and legacies, the residuary legatee being entitled to what remained after payment of the debts and legacies. For this conclusion he relied on authorities submitted by Mr. T. F. Bayard, which are set out in the report. But according to the Chancellor a charge of legacies on land does not impliedly carry to the executor the power to raise them by sale of it. There is no ground of necessity out of which such a power must be implied. The charge creates a right in

174     FERRIS, ADM'R., vs. FERRIS, ET AL.

Opinion.

the legatee which he can readily enforce in his own name by a direct proceeding in equity, without the intervention of the executor. For this position the Chancellor said he had found no authority, except that he had found no case where such an order had been given. He said, however, that if the holders of the legal title had been made parties to the cause they would have been bound by it. He stated that of course the Court of Chancery had no power to order a sale to pay debts—a matter solely within the jurisdiction of the Orphans' Court, and his suggestion was that the conversion take place there. Later the owner of the legal title was made a party defendant by amendment, and thereupon, according to the report, a decree was made for the executor to sell the land in aid of the personal estate.

It will be readily seen the will of Anna M. Ferris even more clearly indicated an intention to charge the legacies on the land than in *Rambo v. Rumer*. After making certain specific bequests in the second item, the testatrix by the third item gave all the residue of her estate to two sisters for life, with survivorship, and then provided that all the residue so given to them "shall be disposed of." And further, as the most important feature in this respect, after giving several pecuniary legacies, she gave to three brothers whatever residue should remain after the debts and legacies are paid. This latter provision has frequently been considered by courts elsewhere as clearly charging the legacies on the land, and in Delaware it is so settled.

Chancellor Johns, Sr., in *Hilford v. Way*, 1 *Del. Ch.* 342, so held. There, by the will pecuniary legacies were given and gave the remainder of his estate, "if any there be," to the same legatees. Chancellor Johns, Sr., said:

"The words, 'the remainder of any estate if any there be,' manifestly import that the residuary devisees were only to take the residue of the estate after debts and legacies should be paid."

He held that this and the fact that the personal estate was small indicated that the legacies were to be paid, if necessary, out of the real estate, and so were a charge thereon. Chancellor Nicholson, in *Getchell v. Rust*, 8 *Del. Ch.* 284, 68 *Atl.* 404,

recognized those two cases as authorities, and that the existence of a residuary clause was considered to be demonstrative evidence of an intention to charge a legacy upon the land. In *Miller v. Cooch*, 5 *Del. Ch.* 161, it was said that the question as to whether a legacy is a charge on land must be determined solely from the will, but the question of extrinsic evidence as to the circumstances of the testator at the date of the will was not discussed.

By the Ferris will the residuary gift to the brothers was specifically stated to be subject to legacies as well as debts, for the gift was of whatever remained after the debts and legacies had been paid. The circumstances also show such intention, for the personal estate, the primary fund for the payment of legacies, was entirely insufficient to pay the legacies. This circumstance may be considered. Chancellor Johns, Sr., did so in *Hilford v. Way*, and the smallness of the personal estate as compared with the size of the pecuniary legacies was considered an element to show intention. Extrinsic evidence is admissible to show the character of the estate of the testator at the time of the making of the will. 40 *Cyc.* 2017, 2019, citing many cases. In *Irwin v. Teller*, 188 *N. Y.* 25, 80 *N. E.* 376, the court said:

"In *Hoyt v. Hoyt*, (85 *N. Y.* 142), it was held that legacies may be charged upon real estate without express direction, if the intention of the testator so to do can be fairly gathered from the provisions of the will; and extrinsic circumstances may be considered in aid of the terms of the will. Folger, J. (at page 147), states: 'It is assumed that no man, in making a final disposition of his estate, will make a legacy, save with the honest, sober-minded intention that it shall be paid. Hence, when from the provisions of a will prior to the gift of legacies it is seen that the testator must have known that he had already so far disposed of his personal estate as that there would not be enough left to pay the legacies, it is reasoned that the bare fact of giving a legacy indicates an intention that it shall be met from real estate. So it was reasoned in *Goddard v. Pomeroy*, 36 *Barb.* (546-556). Courts have been urged to go a step further, and to say, that when the facts of the estate, *aliunde* the will, show that the testator must have known that if a legacy was to be paid from personal estate, it must be a barren gift, he must have intended to subject the real estate to a liability for it.'

"Since this was written in 1881, the courts have examined extrinsic

facts to ascertain the intention of the testator, as is evidenced by the cases already cited."

Not only in the bill is there evidence of disparity of personalty as compared with the aggregate of the legacies, but there is testimony showing that at the date of the will the only estate of the testatrix was her undivided one-third interest in the land in question, besides a very small amount of personal property. It is clear, therefore, that all of the legacies were charged on the real estate.

The question remains, however, whether the administratrix c. t. a. can be authorized by this court to sell the land to pay the legacies. Of course, if the original executors were so authorized, the administratrix c. t. a. can under the statute exercise the same powers. In this case the precedent of Chancellor Bates may safely be followed. In *Rambo v. Rumer*, after the devisee had been made a party defendant, by virtue whereof the owner of the legal title would be bound by the decree, he evidently had no hesitation in ordering a sale for the payment of the legacies. The theory evidently is that the holder of the legal title, whether heir at law or devisee, is entitled to hold the land subject to the legacies and to the right of the legatees to enforce payment of them in case the owner does not pay them. Where, however, the owner being a party defendant does not object to the sale by the executor under the decree of the court, the court is justified in giving to the executor such authority. Such a course is in this case manifestly advantageous to all here concerned, for in this one preceding there would be a conversion of the realty into personalty and an application of the proceeds of sale to the payment in whole, or part, of the legacies, rather than subjecting the parties and the estate to the costs of about twenty separate suits by the individual legatees to enforce payment of their respective legacies. This would also be advantageous to the owners of the land in case the proceeds of sale exceeded the aggregate of the legacies. In this case the owners of the legal title are all parties defendant and have answered, submitting to the decision of the court, and thereby not only indicating that a sale by the personal representative

of the testatrix would be advantageous, but also estopping themselves, as Chancellor Bates said, and all who may claim under them, from contesting the title of the purchaser at the sale.

There is, moreover, in the will a clearly shown intention that there should be such a distribution of the estate of the testatrix at the death of her last surviving sister as could only be accomplished by a sale. There is in the eleventh clause a gift of whatever may remain after all the debts and legacies "have been paid." If the testatrix had intended to do no more than devise her interest in the land (which was practically her sole asset), she would have used language appropriate to a devise subject to legacies, and though this may be the legal effect of the language used, there is also evidence of an implied power to the executors to sell the land to pay the legacies. Again, the words "I give and bequeath" in this item are primarily appropriate to a gift of personalty, such as the balance of the proceeds of sale would be after conversion by the executors. Again, the gift in item eleven to her three brothers is followed by a substitutionary gift (which did not in fact become effective) to the widow of any of the brothers who should be dead at the "distribution of said residue." This also is an expression appropriate to a case where the executor converts land, from the proceeds of which legacies are "paid" and a "distribution" made of the residue. Considering, therefore, the general scheme of the will, and these and perhaps other points indicating intention, power is impliedly given to the executors to sell the undivided interest of the testatrix in the land in question, and in the absence of opposition from the owners the court should not hesitate to confer the power to sell the land in aid of the personal estate. In this way the administratrix c. t. a. will be clothed with authority, if the power of sale be not impliedly conferred by the will.

A decree will be entered declaring the legacies charges on the land and authorizing and directing the administratrix c. t. a. to sell and convey the same, to be followed by an order for the application of the proceeds of sale to payment in whole, or in part, pro rata of the legacies.