In the Matter of the Disposition of the Real Property of SARAH LEMET SARGENT, Deceased.

Surrogate's Court, Saratoga County, August 5, 1925.

**Wills — construction — extrinsic evidence properly received to ascertain intention of testatrix — will gave residue of estate to certain persons, named elsewhere as general legatees, and directed in codicil that executor pay all inheritance taxes from estate " so that each legatee may receive the full sum bequeathed "— real estate acquired by decedent after execution of will and codicil not specifically devised — testatrix intended real and personal property as whole to constitute fund from which payment was to be made to general legatees with residue to residuary legatees — insufficiency of personal property for payment of debts of estate, administration expenses and general legacies warrants charge of deficiency upon undevised real estate — application to sell real estate under Surrogate's Court Act, art. 13 (§§ 232–250), granted.**

Extrinsic evidence may be received by the Surrogate's Court with a view of ascertaining the intention of a decedent where the language of the will gives rise to ambiguity.

Testatrix by a gift of the residue of her estate to certain persons, named elsewhere in her will as general legatees, and a direction in a codicil that her executors pay all inheritance taxes from her estate " so that each legatee may receive the full sum bequeathed to him or her, if my estate permits thereof," intended that her real and personal property as a whole should constitute a fund to be applied, without distinction as to whether or not it was realty or personalty from which payment was to be made to the general legatees, with the residue over to residuary legatees.

The absence of sufficient personal property for the payment of debts, expenses of administration, general legacies and inheritance taxes warrants the charge of the deficiency upon the real estate which the decedent acquired after the making of her will and codicil, and which she did not specifically devise, and, therefore, an application to sell the real estate for such purpose, pursuant to article 13 (§§ 232–250) of the Surrogate's Court Act, should be granted.

APPLICATION for leave to sell decedent's real estate for payment of legacies.

*H. E. McKnight,* for the petitioner.

*William Rooney,* special guardian.

*Lawrence B. McKelvey,* for Leonard R. Sargent.

*Henry W. Williams,* for Helen Baker.

*Schwarte, Slade, Harrington & Goldsmith,* for Alice T. Luther.

TUCK, S.:

This is an application for leave to sell the real estate of the decedent for the payment and distribution of their respective

shares to the parties entitled thereto pursuant to the provisions of article 13 (§§ 232–250) of the Surrogate's Court Act.

The decedent left a last will and testament dated July 24, 1906, and a codicil thereto dated August 4, 1910. She died November 19, 1924. She was unmarried. For many years she had been employed as a copyist in the county clerk's office of Saratoga county. Her heirs at law and next of kin as shown by the petition for probate were first cousins and children of first cousins and it appears that as to some of them it was not known where they were living, nor where their places of residence were, nor who might be the husband, widow, heirs at law, next of kin and personal representatives of such as might be dead.

The will and codicil were admitted to probate March 24, 1925. The first question to be presented is whether in the present case the court may resort to extrinsic evidence in order to ascertain the intention of the testatrix. The court holds that the language of the 4th paragraph of the codicil gives rise to an ambiguity and that the court has authority to resort to extrinsic evidence. For this purpose the motion to strike out the statement of facts is denied.

Among the facts which have been brought to the court's attention as extrinsic evidence are that at the time of making her will and the codicil thereto, the decedent's property consisted entirely of personal property and that the amount thereof is not known.

The will first gives a legacy to provide care of cemetery lots and gives legacies to two churches at Ballston Spa where decedent resided. It next gives a legacy of $1,000 to Edward L. Grose, a child of a first cousin; next gives a legacy of $2,000 to William C. Sargent, a first cousin, the legacy to go to his eldest son should he predecease the testatrix; next a legacy of $1,000 to Mary J. Lee, a first cousin; another legacy of $1,000 to Ada Williams, first cousin; a legacy of $1,000 to Katherine Knowles, first cousin; a legacy of $1,000 to Laura Sargent, a first cousin; a legacy of $500 to Alice T. Luther, child of a first cousin. The residuary legatees are the above named Edward L. Grose, Laura D. Sargent, Alice T. Luther and Katherine Knowles.

The codicil is holographic and first gives $2,000 in trust, for benevolence, then to Helen and Mary Easton, who are not related, $1,000 each, to Benjamin Balch, who is not related, $200, and to Ida Elliston, who is not related, $200.

In the 4th paragraph of the codicil she provides as follows: " *Fourth.* I direct my executor to pay all inheritance taxes from my estate so that each legatee may receive the full sum bequeathed to him or her, if my estate permits thereof."

William C. Sargent, Mary L. Lee, Ada Williams and Laura D. Sargent predeceased the testatrix. At the time of the execution of the codicil the entire estate of the testatrix consisted of personal property. After making the codicil it appears that a friend of the testatrix, Mary R. Mooie, left to the decedent a legacy of $5,000 and that this legacy was paid on June 5, 1911, and the amount of such payment was $5,358.64 which appears to have been deposited in testatrix's bank account on June 6, 1911.

In September, 1912, decedent purchased certain real property in the village of Ballston Spa and on November 4, 1912, she contracted for the erection of a house on that lot for $2,900 and certain other charges in connection therewith brought the total amount paid to the contractor to the sum of $3,037.02.

An inventory of decedent's personal propeity was filed April 14, 1925, showing that her personal estate was valued at that time at $10,995.27. The petition in the present proceeding shows that the funeral expenses and claims presented to and allowed by the executor amounted to $3,443.76.

The legacies to William C. Sargent, Mary J. Lee, Adah Williams and Laura D. Sargent have lapsed. As to one-quarter of her residuary estate it is apparent that the deceased died intestate and it is desired to dispose of the real estate in this proceeding for the payment and distribution of their respective shares to the parties entitled thereto and for that reason it becomes necessary to fix and determine the rights and interests of the respective parties as required by section 238 of the Surrogate's Court Act.

There is not sufficient personal property for the payment of the debts, funeral expenses, expenses of administration, the general legacies and the inheritance taxes and it is claimed that the deficiency should be charged upon the real estate. This claim is denied by Alice T. Luther, one of the residuary legatees and by the special guardian.

The Court of Appeals has held in *Morris* v. *Sickly* (133 N. Y. 456) that while ciicumstances surrounding the testator at the time of making a will may, where the language of the will is of doubtful import, be proved for the purpose of arriving at the testator's intent, the intent then existing when ascertained must have effect and may not be varied by after-occurring events.

In that case the testator made a will giving legacies amounting to $2,000. One of the legatees was her sister, Mary Morris, in whose family she resided and to whom she gave $1,800. At the time of making her will testatrix owned no real estate. Her personal property at the time amounted to $2,500. Thereafter she purchased certain real estate for which she paid $2,000, and her personal

property amounted to about $500 at the time of her death. Plaintiff in that action was a sister from whom the testator had purchased the real property and the same person to whom a legacy of $1,800 was given.

The residuary legatees named in her will were her brother, Sylvester Gray, her nephew, Alfred G. Sickly, and her sister Elsie Sutfin. The court held that the testatrix could not have intended when she made her will to have charged the real estate, of which she owned none at the time, with the payment of the legacies contained in the will, and they refused to charge the real estate with the payment of the general legacies.

In some respects the case of *Morris* v. *Sickly* is similar to the present case, that is the fact that at the time of the making of the will the testatrix owned no real estate and that thereafter a considerable portion of personal property was invested in real estate, and that the personal estate remaining is insufficient to pay the general legacies.

In the case of *Harvey* v. *Kennedy* (81 App. Div. 261) a circumstance similar to that set out in *Morris* v. *Sickly,* existed. The testatrix had at the time of making the will personal property sufficient to pay the legacies and left large surplus for the residuum. At the time of making the will the decedent in that case owned real estate. After the making of the will she converted a considerable portion of her personal estate into real estate and thereafter there remained insufficient personal property to pay the debts and the general legacies in full. In this case the general legatees were Mary R. Harvey, sister of the deceased, Spring Forest Cemetery, Susquehanna Valley Home and the residuary legatee was the executor to whom the residuary estate was given in trust for the benefit of the daughter of testator, until the daughter should attain the age of thirty years. The will in this case gives a power of sale to the executor. The court refused to charge the real estate.

Surrogate SLATER in *Matter of Mould* (117 Misc. 1) upon an examination of the authorities for the purpose of determining when general legacies are charged upon the real estate and when they are not, in cases where they are not so charged by express language, and where resort is had to the intention of the testator as expressed generally in his will and other surrounding circumstances has arrived at a method of classification. He says the two major reasons prevading all the cases are the existence of a power of sale in the will, and the fact of the general legacies or residuary gifts being to persons of the blood or to those who have stood in the mutually acknowledged relationship of parent and child, and in his decision has cited a considerable number of cases of testators

Surrogate's Court, Saratoga County, August, 1925.          [Vol. 125

leaving wills containing a power of sale. In these cases where the general legatees are of the blood the courts have uniformly charged the real estate with the payment of the legacies. Where on the other hand, the general legatees are not of the blood, nor persons between whom a parental relationship exists and the residuary legatees are of the blood, the courts have uniformly refused to charge the real estate with the payment of the general legacies.

Surrogate SLATER says: " I find no case, however, creating a charge on real estate, based on the ground of a power of sale contained in the will, where the residuary legatee was of the blood, or who stood in the relationship of parent and child. This is not to be overlooked. Thus, the instant case contains a new state of facts, upon which the courts have not ruled."

In *Matter of Lummis* (101 Misc. 258) Surrogate FOWLER in his opinion says: " The blending * * * of a power of sale and the direction to pay inheritance taxes out of the residuary estate, while worthy of consideration, are never absolutely controlling in determining charges on land. Those circumstances are frequently referred to in the opinions of appellate courts, but the dominating factor has always been the amount of personalty on hand at the time the will was executed. In the case now before the surrogate the usual argument is predicated of the existence of a power of sale, the blending of the realty and personalty in the residuary clause and the direction to pay the inheritance taxes. The contrary argument, in favor of the contention of the widow, is just as strong, based upon these same premises. A power of sale is often put in a will because the precedents will have it so and because such a power may in some way at some time prove valuable. The express direction to pay the taxes out of the residuary estate may be regarded as an indication that the legacies themselves were not so payable, especially where the will was drawn by an attorney. The blending of realty and personalty in a residuary clause was stated in *Brill* v. *Wright*, [112 N. Y. 129], of itself not to be a dominant consideration. *Irwin* v. *Teller*, 188 N. Y. 25."

In *Matter of Noe* (94 Misc. 63) Surrogate FOWLER said: " She had no immediate relatives who would be the natural objects of her bounty; there was no one dependent upon her whom she would be under an obligation to support. Her legatees were personal friends, charitable or religious corporations and persons remotely related to her. There would therefore be no controlling reason for the discrimination in favor of the residuary legatees which a construction limiting the payment of the pecuniary legacies to the personal estate would necessarily imply. * * * Neither of the

residuary legatees was the natural object of her bounty; one was a corporation, the other merely a friend. There is nothing in the will which would indicate an intention on the part of the testatrix to prefer these legatees to thirty other legatees to whom she had bequeathed various sums, and there is no reason extrinsic of the will which would justify or explain such a preference."

In *Matter of Obst* (115 Misc. 711) Surrogate FOLEY holds that the courts will take note of the relationship of a legatee as a controlling factor, when he said: " The legacy of the income on $3,000 in trust for the benefit of Marietta Kerns, the widow of the deceased son of the testatrix, is a specific legacy. *Matter of Matthews*, 122 App. Div. 605. It also partakes of the nature of a demonstrative legacy, being payable out of a specified fund. *Crawford* v. *McCarthy*, 159 N. Y. 514. In either case it is entitled to a preference. The daughter-in-law resided with the testatrix, and appears to have been a special object of her bounty. No other provision was made for her. The codicil contains a clear and unequivocal expression of the testatrix's intention to prefer this legacy to the widow of her son over any of the others. *Matter of Lloyd*, 166 App. Div. 1. This legacy should therefore be paid in full."

In *Ely* v. *Megie* (219 N. Y. 112) it appears that the decedent was a bachelor and left him surviving no near next of kin or heirs at law except two brothers and one sister and it appeared on the examination of the will and codicil that the testator used the words " And provided further, that if my personal estate should be insufficient to fully pay all of the legacies enumerated in my will and the codicil thereto, together with the transfer taxes which may be imposed upon them, I direct that the legacies to the four corporations last above mentioned shall abate *pro rata* or *in toto*, as the necessities of the case may require, before the abatement of the legacies previously provided for in my said will and the codicil thereto."

The court held in respect to this provision that ordinarily the words " personal estate " have a well understood meaning and seldom require resort to extrinsic evidence to explain their significance but that the presence of the words " personal estate " as they appear in the 7th clause of the codicil of the testator must of necessity give rise to an ambiguity which required the justice at the Trial Term to resort to extrinsic evidence to aid in an interpretation of the will and codicil in connection with the general scheme of the instrument, and on examination of the will and codicils of the testator, together with the extrinsic evidence, the court held that the testator intended to charge the payment of legacies

given by his will and codicil upon the real estate not devised by him and that the legacies given by the will of the testator and the codicil thereto were charged upon the real property of which he died seized which was not specifically devised by him and that a power of sale given to the executors of the will was a valid power and should be exercised by them for the purpose of paying the legacies given by the will and the codicils thereto, together with the inheritance taxes.

In the case of *Carley* v. *Harper* (219 N. Y. 295) the court states the direction to the executors to pay the transfer tax on the legacies from the residue is a circumstance suggesting that the legacies should be paid in full.

In that case the will gave many legacies to relatives and strangers aggregating $132,200 to be paid, together with debts and expenses of administration out of a fund which was about $35,000 less than the amount of the legacies. There was also the incidental power of sale, the mingling of real and personal property in a residuary clause and a direction for the payment of the transfer tax out of the residue, all of which the court stated harmonized with the intent to charge the real estate and it was charged with the payment of the legacies.

If under the construction given the words " personal estate " by the Court of Appeals in the case of *Ely* v. *Megie* and upon the extrinsic evidence produced upon the trial in that case, the legacies provided for in the clause of the will containing that language shall be charged upon the real estate where the personal estate is insufficient, it would seem that the proper construction to be placed upon the present situation where there is no distinction as to real or personal property and where the testatrix expressed her intention by directions to her executor to pay all inheritance taxes from " my estate so that each legatee may receive the full sum bequeathed to him or her if my estate permits," the intention of the testatrix was that her real and personal property as a whole constituted a fund which was intended to be applied without distinction as to whether it was real or personalty and that the payment to the general legatees should be charged upon the real estate which the decedent acquired after the making of her will and codicil and which she had not specifically devised.

It does not seem that such a construction can be said to be in conflict with the decision of the court in the case of *Morris* v. *Sickly*, before referred to. The facts in the present case differ sufficiently to present a different situation, particularly in respect to the scheme of the wills. The will in the present case gives the residue to certain persons who are all of them elsewhere

mentioned as general legatees. The provision in the 4th paragraph of the codicil is another important and wholly diverse element. The whole scheme of the will is to be considered in arriving at a determination of the testatrix's intention. There is nowhere any indication that the testatrix sought to discriminate in favor of the residuary legatees. Her intention as this court can infer it from an examination of the will and a consideration of the extrinsic evidence leads to the conclusion that she intended to leave her property substantially to the general legatees and the residue, should there be any, after the legatees had received the full sum bequeathed should then go to the residuary legatees.

Decreed accordingly.