JAMES G. MALONEY, Administrator *cum testamento annexo* of the Estate of LILLIE A. GRAHAM, Dec'd.,

*vs.*

S. CARROLL JOHNSON, also known as CARROLL JOHNSON, HARRY L. JOHNSON, also known as HARRY JOHNSON, CORA T. JUMP, FLORENCE E. JUMP, HOWARD JOHNSON, MARY JOHNSON BARTON, BLANCHE R. GRAHAM MALONEY, also known as BLANCHE GRAHAM MALONEY, ETHEL JOHNSON RAPP, formerly ETHEL JOHNSON, FRANK JOHNSON and JOHN JOHNSON,

*New Castle, April* 18, 1939.

*William Prickett,* for complainant.

*W. Reese Hitchens,* of the firm of Hering, Morris, James & Hitchens, for defendants S. Carroll Johnson, Cora T. Jump and Florence E. Jump.

*Joseph S. Wilson,* for defendant Albert L. Massey, guardian *ad litem* for Harry L. Johnson, also known as Harry Johnson, an alleged insane person, and guardian *ad litem* for John Johnson, a minor defendant.

THE CHANCELLOR: This is a bill to construe the will of Lillie A. Graham, late of the town of Dover. Mrs. Graham died on or about the 10th day of January, 1937, having first made and executed a paper writing, dated July 24, 1934, which purported to be her last will and testament, and which, after her death, was duly probated as such by the Register of Wills, in and for Kent County.

James A. Graham, the husband of the deceased, and the executor named in her will, died on June 15, 1937, before it had been probated, and letters of administration, *c. t. a.,* on her estate were subsequently issued by the Register of Wills, in and for Kent County, to James G. Maloney, the complainant.

The gross estate of Mrs. Graham, at the time of her death, consisted of certain personal effects, all of which were specifically bequeathed by her, and of certain moneys on deposit to her credit in two accounts in the Farmers Bank, at Dover; the balance shown by her checking account in that bank at that time was $50.45, while the balance shown

by her savings account was $3015.65. By a stipulation filed, it is agreed that she had substantially the same amount of money on deposit, and other property, when she executed her will.

In construing a will, the intent of the testatrix is the important question to be determined. *Wilmington Trust Co. v. Bronxville Trust Co., Exr., et al., ante p.* 64, 5 *A.* 2d 248. Ordinarily, such intent must be ascertained from the language of that instrument, when read as a whole, but surrounding facts and circumstances, which throw any light on it, are frequently important, and admissible evidence, when the will is, in any sense, ambiguous and uncertain as to its meaning. *Sussex Trust Co. v. Polite,* 12 *Del. Ch.* 64, 106 *A.* 54; *Ferris, Adm'x., v. Ferris,* 11 *Del. Ch.* 171, 98 *A.* 215; *Knight v. Knight,* 5 *Boyce* 570, 96 *A.* 32; 1 *Schouler on Wills,* § 572; see, also, *Colvocoresses v. Wasserman Co.,* 9 *W. W. Harr.* (39 *Del.*) 71, 196 *A.* 181. Such facts and circumstances are, however, admitted and considered by the court "to resolve what is uncertain, but not to change or contradict what is plain, nor to substitute or insert new matter * * *." 1 *Schouler on Wills,* § 572; see, also, *Colvocoresses v. Wasserman Co.,* 9 *W. W. Harr.* (39 *Del.*) 71, 196 *A.* 181. This rule is applied in order that the court may put itself, as nearly as possible, in the position of the testatrix when she executed her will. 1 *Schouler on Wills,* § 572. Under it, evidence, as to the testatrix' family, and the nature, amount and character of her property, at the time her will was made, may be taken into consideration by the court, if it throws any light on her intent. *Sussex Trust Co. v. Polite, et al.,* 12 *Del. Ch.* 64, 106 *A.* 54; *Ferris, Adm'x., v. Ferris,* 11 *Del. Ch.* 171, 98 *A.* 215; *Himmel v. Himmel,* 294 *Ill.* 557, 128 *N. E.* 641, 13 *A. L. R.* 608.

The first sentence of the will of Mrs. Graham provides:

"At my death I bequeath or will to my husband the interest on money in Farmers Bank Dover, Delaware his life time."

The next sentence provides:

."At his death it is then to be divided among or between my brothers and sisters and brothers and sisters heirs, S. Carroll Johnson, Harry L. Johnson, Cora T. Jump * * *, Florence E. Jump * * *, Howard Johnson, and Mary Johnson Barton, heirs of my brother Andrew W. Johnson, Blanche R. Graham Maloney heir of my sister Emma Johnson Graham."

That the word "it," as here used, is intended to refer to the whole of the money on deposit to the credit of Mrs. Graham in the Farmers Bank, at Dover, and not merely to the interest thereon, would seem to be apparent from the fact that there are no limitations providing for the use of that fund for life, or further bequests of it to persons, other than those named by the testatrix as the primary beneficiaries. At any rate, the bare gift of the use of or interest on a specified sum of money, without any further disposition of it, amounts to an absolute gift of that fund. *Lorton, Adm'r. v. Woodward, Ex'r.*, 5 *Del. Ch.* 505; *National Bank of Smyrna, Ex'r., v. Ireland, et al.*, 19 *Del. Ch.* 76, 162, *A.* 54; see, also, *Wilmington Trust Co. v. Houlehan,* 15 *Del. Ch.* 84, 131 *A.* 529; 69 *C. J.* 1453.

After the provisions above quoted, Mrs. Graham specifically bequeaths certain pieces of jewelry, and certain household goods and personal effects.

The will next provides:

"Two hundred dollars bequeathed for Harry Johnson's burial unless the Home takes care of his burial; then the two hundred dollars to be divided equally between his three heirs Ethel Johnson, Frank Johnson and John Johnson. Also three hundred dollars extra to be divided among Ethel Johnson, Frank Johnson, John Johnson, Harry Johnson's estranged wife is not to have any of the two hundred dollars left for Harry's burial."

The testatrix then further provides:

"I bequeath to Howard Johnson twenty-five dollars. I bequeath to Mary Johnson Barton twenty-five dollars. I bequeath to Blanche Graham Maloney two hundred dollars, * * *."

In the same sentence she then adds,

"The rest of my estate is to be divided equally between Carroll Johnson, Cora T. Jump and Florence E. Jump."

In the second sentence of her will, the testatrix provides that at the death of her husband the money in the Farmers Bank "is then to be divided among or between my brothers and sisters and brothers and sisters heirs," naming them.

It appears from a stipulation filed that of the persons named in that sentence, S. Carroll Johnson, Harry L. Johnson, Cora T. Jump and Florence E. Jump are brothers and sisters of Mrs. Graham; that Howard Johnson and Mary Johnson Barton are children of a deceased brother, Andrew W. Johnson, and that Blanche R. Graham Maloney is the only child of a deceased sister, Emma Johnson Graham.

It, also, appears in the same stipulation that Ethel Johnson, now Ethel Johnson Rapp, Frank Johnson and John Johnson, who are also described as heirs, are children of the said Harry L. Johnson, a brother of Mrs. Graham.

When the context requires it, the words "heir" and "heirs" are sometimes used in the sense of child, or children (*Underhill on Wills*, § 616); and that they are used in that sense in Mrs. Graham's will would seem to be apparent.

Harry L. Johnson survived the testatrix, and is still living, but in the latter part of the will his children are described as his heirs. As that word clearly means children in that part of the will, in the absence of anything to show a contrary intent, both the words "heir" and "heirs," as used in the first part of the will, would seem to have the same meaning. *Silvia v. Scotten, et al.*, 2 *W. W. Harr.* (32 *Del.*) 295, 122 *A.* 513; *State v. Highfield*, 4 *W. W. Harr.* (34 *Del.*) 272, 152 *A.* 45.

So far as the bank accounts are concerned in the first part of her will, Mrs. Graham, therefore, names as the subjects of her bounty her brothers and sisters and the child and children of a sister and a brother, who were then dead.

The payment of specific legacies is always preferred to the payment of general legacies (*Cooper, Ex'r., v. Bishop, et al.*, 19 *Del. Ch.* 98, 163 *A.* 644; *Cooch's Ex'r., v. Cooch's Adm'r., et al.*, 5 *Houst.* 540, 1 *Am. St. Rep.* 161), and if, after the death of Mr. Graham, the bequest of the money on deposit in the Farmers Bank is a legacy of that nature, there are no funds, whatever, applicable to the other legacies provided for by the testatrix in the latter part of her will. In fact, if the latter provisions are intended to be additional legacies, not payable out of the bank account, and not merely specific directions explanatory of prior general provisions, there never were any funds for their payment; and the testatrix must have known that when she executed her will.

Where it is reasonably possible, without doing violence to the intent of the testatrix, a court will harmonize all apparently inconsistent or repugnant clauses of a will, so as to give effect to every part of it. *Shriver v. Danby*, 12 *Del. Ch.* 84, 106 *A.* 122; *Hilles v. Hilles*, 11 *Del. Ch.* 159, 98 *A.* 296.

In some cases, general provisions in one part of a will may, therefore, be explained by other, and more specific, provisions, clearly indicating the intent of the testatrix. In most cases, however, a gift, in clear and positive terms, is not cut down by later vague and doubtful language. *Shaw, et al., Ex'rs., v. Hughes, Adm'r.*, 12 *Del. Ch.* 145, 108 *A.* 747; *Downs, Ex'r., v. Casperson, et al.*, 20 *Del. Ch.* 119, 171 *A.* 753; *Underhill on Wills*, § 358.

As was aptly said in *Underhill on Wills*, § 358, *supra:*

"In other words, any subsequent expression of intention by the testator must, in order to limit the prior gift, be equally clear and intelligible, and indicate an intent to that effect, with reasonable certainty."

Somewhat the same general principles apply when it is claimed that a prior gift is revoked, merely by implication by a later provision of the same will, and not by express words of revocation. *Underhill on Wills*, §§ 251, 359. When, therefore, there are seemingly repugnant clauses in a will, every effort should be made to reconcile them, in order to give effect to the whole will, if that is reasonably and fairly possible, but if the two provisions cannot stand together it seems that the latter usually prevails. *Underhill on Wills*, §§ 357, 359. But, independent of this rule, in view of the fact that the money on deposit in the Farmers Bank, at Dover, was the only fund applicable to pecuniary legacies, even when the will was made, the intent of Mrs. Graham to substitute the provisions for the benefit of Harry L. Johnson, and for his children, in the latter part of her will, for any apparent bequest to him, individually, seems clear.

Under those provisions "unless the Home takes care of his (Harry L. Johnson's) burial," $200, apparently meaning of the money in bank, is to be used for that purpose. If the Home should bury Mr. Johnson, that sum is then "to be divided between his three heirs (meaning children), Ethel Johnson, Frank Johnson and John Johnson." Three Hundred Dollars "extra" is "to be divided among Ethel Johnson, Frank Johnson and John Johnson," none of whom were mentioned in the second sentence of the will. These provisions are, perhaps, explained by the fact that Harry L. Johnson is an insane person, in an institution. Howard Johnson and Mary Johnson Barton, the children of a deceased brother, and Blanche Graham Maloney, the child of a deceased sister, are, also, mentioned as legatees in the second sentence of Mrs. Graham's will; but when that sentence is read in connection with other, and subsequent, provisions, it is apparent that the shares of Howard Johnson and Mary Johnson Barton in the funds on deposit in the Farmers Bank, at Dover, are each intended to be $25; and that the share of Blanche Graham Maloney in that fund is intended to be $200.

When the will is read as a whole, and the circumstances existing when it was made are considered, it is, also, apparent that the phrase in the latter part of it "the rest of my estate is to be divided equally between Carroll Johnson, Cora T. Jump and Florence E. Jump," who are a brother and two sisters of the testatrix, can only mean the balance of the bank account, after paying the specific amounts bequeathed for the benefit of Harry L. Johnson, to his children, to Howard Johnson and Mary Johnson Barton, and to Blanche Graham Maloney.

A decree will be entered in accordance with this opinion.